**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 27, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MICHAEL LEE WILSON,

        Petitioner - Appellant,

    v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

        Respondent - Appellee.

No. 06-5179

_____

DONALD WACKERLY II,

        Petitioner - Appellant,

    v.

RANDALL G. WORKMAN, Warden,
Oklahoma State Penitentiary,

        Respondent - Appellee.

Nos. 07-7034 and 07-7056

---

**APPEALS FROM THE UNITED STATES DISTRICT COURTS**
**FOR THE NORTHERN AND EASTERN DISTRICTS OF OKLAHOMA**
**(D.C. Nos. 00-CV-147-CVE and CIV-01-567-FHS-KEW)**

---

Howard A. Pincus, Assistant Federal Public Defender, Denver, Colorado
(Raymond P. Moore, Federal Public Defender, and Lanita B. Henricksen,
Henricksen & Henricksen, Oklahoma City, Oklahoma, with him on the briefs), for
Petitioners Mr. Wilson and Mr. Wackerly.

Seth S. Branham, Assistant Attorney General, Oklahoma City, Oklahoma (W.A. Drew Edmondson, Attorney General of Oklahoma, Oklahoma City, Oklahoma, with him on the briefs), for Respondent Mr. Workman.

Before **HENRY**, Chief Judge, **TACHA**, **KELLY**, **BRISCOE**, **LUCERO**, **MURPHY**, **HARTZ**, **O'BRIEN**, **McCONNELL**, **TYMKOVICH**, **GORSUCH**, and **HOLMES**, Circuit Judges.

**McCONNELL**, Circuit Judge, joined by **HENRY**, Chief Judge, and **KELLY**, **LUCERO**, **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

This court granted rehearing en banc to determine whether to accord deference to decisions of the Oklahoma state courts on claims of ineffective assistance of counsel under 28 U.S.C. § 2254 where those claims are based on evidence that was not part of the original trial court record and where the state court declined to supplement the record with the proffered evidence, based on Oklahoma Appellate Rule 3.11(B)(3)(b). Under Oklahoma procedure, appellate review of a criminal conviction is confined to the original trial record unless that record has been supplemented through an evidentiary hearing. Rule 3.11(B)(3)(b) allows a defendant, on direct appeal, to offer non-record evidence in support of an ineffective assistance of trial counsel claim. If the court finds, "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence," the Oklahoma Court of Criminal Appeals ("OCCA") will remand to the trial court for an evidentiary hearing based on the claims raised in the application. Okla. Stat. tit. 22, ch. 18,

App. Rule 3.11(B)(3)(b) [hereinafter "Rule 3.11"]; *Dewberry v. State*, 954 P.2d 774, 775–76 (Okla. Crim. App. 1998). Following the evidentiary hearing, the trial court makes written findings of fact and conclusions of law. "It is the record from this evidentiary hearing which . . . supplements the trial court record on appeal." *Dewberry*, 954 P.2d at 776. Any affidavits or other evidence supplied in support of the evidentiary hearing are not considered part of the record on which the OCCA bases its *Strickland* ruling unless they are properly introduced at the evidentiary hearing. *Id.* ("The record on appeal must remain as *only that* which has been presented through the trial court.") (emphasis added).

In *Wilson v. Sirmons*, 536 F.3d 1064 (10th Cir. 2008), a divided panel held that where the Oklahoma Court of Criminal Appeals rejects an ineffective assistance of counsel claim in a capital case predicated on non-record evidence without ordering an evidentiary hearing to supplement the record and without otherwise considering that evidence under the standards set forth in *Strickland*, the decision of the OCCA on that claim is not entitled to deference under Antiterrorism and Effective Death Penalty Act ("AEDPA.") *Id.* at 1079–1083. In *Wackerly v. Workman*, No. 07-7034 & 07-7056, the panel faced a similar question. Recognizing that our circuit's precedents have not been consistent on this point, the full court voted to grant rehearing en banc in *Wilson*, and initial en banc review in *Wackerly*, on the following issues:

> (1) When a defendant bases his claim of ineffective assistance of counsel in part on non-record evidence proffered under Oklahoma

-3-

Rule 3.11, and the OCCA denies the motion for an evidentiary hearing and also denies the ineffective assistance of counsel claim without reference to the proffered non-record evidence, is the OCCA's decision on the defendant's ineffective assistance claim an "adjudication on the merits" warranting deference under § 2254(d)?

(2) What effect, if any, does the extent of the OCCA's discussion of the Rule 3.11 motion, and the proffered non-record evidence, have on whether the OCCA's decision on the petitioner's ineffective assistance of counsel claim is entitled to deference under § 2254(d)? The briefs should consider circumstances where the OCCA denial, (a) is made summarily without reasoning or discussion of the Rule 3.11 materials, or otherwise lacks substantive reasoning, (b) cites to Rule 3.11 but does not discuss proffered evidence, or (c) cites to Rule 3.11 and discusses proffered evidence.

*Wilson v. Sirmons*, 549 F.3d 1267, 1268–69 (10th Cir. 2008).

Having received supplemental briefs and heard oral argument in these cases, we conclude that the panel in *Wilson* was correct in its holding that AEDPA deference does not apply when, pursuant to Rule 3.11, the OCCA decides an ineffective assistance of counsel claim without consideration of non-record evidence that, "if true and not contravened by the existing factual record, would entitle the petitioner to habeas relief" under *Strickland*. *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). We therefore reinstate the panel decision in *Wilson*, and remand to the panel in *Wackerly* for disposition consistent with this decision.

## I. BACKGROUND

Michael Lee Wilson and Donald Wackerly II were convicted of first degree murder in unrelated cases and both were sentenced to death. Both defendants raised claims of ineffective assistance of counsel on appeal, and in support of those claims, proffered affidavits and other non-record evidence purporting to show that their trial counsel's performance fell below constitutional standards of effectiveness under *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Pursuant to Oklahoma Appellate Rule 3.11(B)(3)(b), they requested an evidentiary hearing to submit non-record evidence on their ineffective assistance claims. The OCCA denied this request in both cases.

Mr. Wilson's primary claim was that his trial counsel was constitutionally deficient with respect to mental health mitigation at the sentencing phase. He proffered five affidavits in support of this claim. Three of these affidavits were from family members and one was from his former girlfriend, who is also the mother of his child. All described different mental health problems Mr. Wilson had, along with other struggles he experienced throughout his youth. The fifth was from the trial expert, Dr. Eugene Reynolds, who had been engaged by trial counsel only three weeks prior to the trial. In his affidavit, Dr. Reynolds explained that he had not had time prior to trial to properly examine Mr. Wilson. In particular, although one of the tests he administered prior to trial indicated the possibility of schizophrenia, the test was invalid; but Dr. Reynolds did not have time to readminister the test. Nor did he have the benefit of information from the

-5-

family prior to making his pre-trial diagnoses. Dr. Reynolds then set forth the diagnoses that he reached after trial with the benefit of the additional affidavits from Mr. Wilson's family, provided by appellate counsel, as well as the retesting and further examination. These diagnoses showed, among other things, that Mr. Wilson suffered from schizophrenia and hallucinations. He also outlined the diagnoses he was able to make prior to the sentencing phase but which were nonetheless never presented to the jury, and recounted his interactions with the defendant. *Wilson*, 536 F.3d at 1075, 1077. All of these affidavits were prepared after judgment had been rendered at trial, and thus were not part of the trial record.

In denying Mr. Wilson's claim, the OCCA explained that "[Mr.] Wilson has filed . . . an application for an evidentiary hearing regarding ineffective assistance of counsel in an attempt to supplement the record with materials not found in the record." *Wilson v. State*, 983 P.2d 448, 472 (Okla. Crim. App. 1998). The court then dealt with the issue in a single paragraph, beginning with the words: "A review of the trial record shows . . ." and containing a summary of Dr. Reynolds's trial testimony, with no mention of his post-trial affidavit. *Id.* The court then concluded:

> The mere fact more evidence could have been presented is not, in itself, sufficient to show counsel was deficient. Reynold's [sic] testimony was credible and well developed. We find [Mr. Wilson] has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence.

-6-

*Id.* (citation omitted).  In an accompanying footnote, it denied Mr. Wilson's motion for an evidentiary hearing, without reference either to the *Strickland* standard or to the Rule 3.11(B)(3)(b) standard.  *Id.* at n. 8.  The court did not quote, summarize, or analyze the substance of the non-record evidence.

On habeas review, the federal district court applied AEDPA deference to the issue of whether counsel was ineffective at the sentencing phase and found that the OCCA's denial of the claim was not an unreasonable application of Supreme Court precedent.  *Wilson v. Sirmons*, 2006 WL 2289777, at *43 (N.D. Okla. Aug. 8, 2006).  It denied both his habeas petition and his request for an evidentiary hearing.

Mr. Wackerly also proffered non-record evidence that he argued trial counsel should have submitted as mitigating evidence at the penalty stage.  This included records of longstanding health problems and cognitive disorders, including suicide attempts and drug addiction.  It also included the medical opinion of Dr. Micki Ozolins, a neuropsychologist, who diagnosed Mr. Wackerly with "longstanding dependent personality disorder" and opined that the parenting Mr. Wackerly had received and his cognitive limitations likely contributed to his poor adjustment throughout life.  Dr. Ozolins testified that Mr. Wackerly had a dependent relationship with his girlfriend and accomplice Michelle, that he would be easily influenced by her, and that Mr. Wackerly would be devastated by the loss of a close relationship, such as the one he had with his terminally ill mother.

The OCCA rejected Mr. Wackerly's ineffectiveness claim as it had Mr. Wilson's, but was even more explicit in its rejection of the proffered evidence under Rule 3.11. *Wackerly v. State*, 12 P.3d 1, 14 (Okla. Crim. App. 2000). It cited the rule and then found that while Mr. Wackerly "has shown this Court that trial counsel could perhaps have accessed other information in preparing for trial," he "has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained of evidence." *Id.* Accordingly, it denied his application for an evidentiary hearing. On habeas review, the district court acknowledged that the OCCA had analyzed Mr. Wackerly's ineffectiveness claim under Rule 3.11's standard, but it nonetheless applied AEDPA deference. *Wackerly v. Sirmons*, 2007 WL 963210, at *8 (E.D. Okla. Mar. 27, 2007). It found that the OCCA's determination that Mr. Wackerly had not established deficient performance was contrary to clearly established federal law, *id.*, but denied his petition on the ground that he could not show prejudice. *Id.* at *16.

**The Panel Decision in *Wilson***

In reviewing Mr. Wilson's case, a panel of this court held that his ineffectiveness claim deserved de novo review rather than AEDPA deference. In Part III(c) of the lead opinion, joined by Judge Hartz, who concurred separately in other respects, the panel noted first of all that the state court's decision on the ineffectiveness claim was based upon an incomplete factual record—i.e., the

-8-

OCCA did not consider the non-record evidence—and that "when a state court's disposition of a mixed question of law and fact, including a claim of ineffective assistance, is based on an incomplete factual record, through no fault of the defendant, and the complete factual record has since been developed and is before this Court, we apply de novo review to our evaluation of the underlying claim." *Wilson*, 536 F.3d at 1079 (citing *Bryan v. Mullin*, 335 F.3d 1207, 1215 (10th Cir. 2003) (en banc)). The panel emphasized that this "does not mean that we apply de novo review every time the state court declines to hold a hearing on a defendant's evidentiary proffer," *id.*, but that in this case the OCCA had not considered the non-record evidence when it denied the ineffectiveness claim. This was not a case where "the state court examined the claim on the merits, including the proffered non-record evidence, but decided that even if that new evidence were fully developed, the defendants could not meet their burdens under *Strickland*." *Id*. Instead, this was a case where the OCCA relied solely on the trial record when it denied the claim and the evidentiary hearing, as provided by Rule 3.11. *See id.* at 1080 ("Any affidavits or other evidence supplied in support of the evidentiary hearing are not considered part of the record on which the OCCA bases its *Strickland* ruling unless they are properly introduced at the evidentiary hearing."); *Dewberry*, 954 P.2d at 775 ("The record on appeal must remain as *only that* which has been presented through the trial court.") (emphasis added).

Judge Tymkovich dissented. While the majority held that the OCCA decision could be considered an "adjudication on the merits" only if the court considered both the record and non-record evidence, Judge Tymkovich argued that "[a]n adjudication on the merits occurs when the state court resolves the case on substantive grounds, rather than procedural grounds." *Wilson*, 536 F.3d at 1128 (Tymkovich, J., dissenting) (quoting *Valdez v. Cockrell*, 274 F.3d 941, 946–67 (5th Cir. 2001)). Because the OCCA's rejection of Mr. Wilson's ineffectiveness claim was based on substantive rather than procedural grounds, Judge Tymkovich found it irrelevant that the state court had not considered all the evidence that the defendant presented. To the degree that our precedents held otherwise, he argued that they had been overruled by *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.").

Judge Tymkovich further argued that "[b]ecause the standard for obtaining an evidentiary hearing under Rule 3.11 is lower than the standard set forth in *Strickland*—petitioner need only show a 'strong possibility' of ineffective assistance—when the OCCA denies an evidentiary hearing under Rule 3.11, it necessarily makes a merits determination petitioner cannot meet the substantive *Strickland* standard." *Wilson*, 536 F.3d at 1129 (Tymkovich, J., dissenting). The panel majority rejected Judge Tymkovich's argument that the OCCA's denial of

an evidentiary hearing under Rule 3.11 could substitute as an adjudication on the merits of a defendant's *Strickland* claim because it rejected Judge Tymkovich's position that Rule 3.11 laid out a lower standard. "Although Rule 3.11 uses a lower substantive standard ('strong possibility') it erects a much higher evidentiary hurdle for meeting that standard: to obtain an evidentiary hearing under Rule 3.11, the movant must provide 'clear and convincing evidence' of this 'strong possibility.'" *Id.* at 1081. The panel stated that "the interplay of these two standards—one more demanding, one less demanding, than the federal—is not clear," but that "we cannot conclude that when the state court denies an evidentiary hearing under Rule 3.11 it has necessarily decided that the federal standard was not satisfied." *Id.* It therefore concluded that there had been no adjudication on the merits and reviewed Mr. Wilson's claim de novo, ultimately remanding to the district court to hold an evidentiary hearing for consideration of the proffered evidence.

## II. DISCUSSION

### A. Whether an OCCA Ruling is an Adjudication on the Merits When It Does Not Consider Material Non-Record Evidence

*1. The Text, Structure, and Purpose of AEDPA*

Under AEDPA, federal courts must defer to the state court's resolution of a claim when the state court has adjudicated the petitioner's claim "on the merits." 28 U.S.C. § 2254(d). If there has been no adjudication on the merits, we review the claim de novo. In the cases before us, the state court disposed of mixed

-11-

questions of law and fact, but did so on a factual record that was, solely as a result of the state procedural rule, incomplete. We hold that when the state court makes such findings on an incomplete record, it has not made an adjudication on the merits to which we owe any deference.

The merits question presented is whether, in light of non-record evidence, trial counsel's performance satisfied constitutional standards. If, because of procedural obstacles to supplementing the record, the state court does not consider the material, non-record evidence that has been diligently placed before it, it perforce does not provide an answer to that question. Ineffective assistance claims based on a failure to investigate will almost always involve evidence not contained within the record, as the defendant will have to point to what trial counsel *would* have uncovered had he diligently performed his duties. By definition such evidence is not already in the trial record. Nor was the evidence produced by these defendants so slight or inconsequential that it could not be considered material to the constitutional claims. If the state court fails to consider the very evidence that the claim is based upon, then the state court has not adjudicated the merits of the claim.

A claim is more than a mere theory on which a court could grant relief; a claim must have a factual basis, and an adjudication of that claim requires an evaluation of that factual basis. *Black's Law Dictionary* defines a "claim" as "[t]he aggregate of operative facts giving rise to a right enforceable by a court."

*Black's Law Dictionary* (8th ed. 2004); *see also United States v. Ripa*, 323 F.3d 73, 83 n.10 (2d Cir. 2003); *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, 437 F. Supp.2d 1193, 1208 (D. Kan. 2006). Indeed, when a civil complaint states only "a formulaic recitation of the elements of a cause of action" without "[f]actual allegations [that are] enough to raise a right to relief above the speculative level," we dismiss the complaint for failure to state a claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This is no different in the habeas context, where the Supreme Court has said that "a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, *as well as a statement of the facts that entitle the petitioner to relief*." *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996) (emphasis added). And AEDPA tells us that for deference to apply the state court not only must dispose of a claim, but must do so "on the merits." *Black's Law Dictionary* defines "on the merits" as a judgment "delivered after the court has heard and evaluated the evidence and the parties' substantive arguments." *Black's Law Dictionary* (8th ed. 2004). When the state court has not considered the material evidence that a defendant submitted to support the substance of his arguments, it has not adjudicated that claim on the merits.[1] *See Barkell v. Crouse*, 468 F.3d 684, 697 (10th Cir. 2006)

---

[1] This does not mean, as a dissent suggests (Tymkovich Diss., at 11), that the addition of any "new evidence" necessarily makes the petitioner's case a "new claim," any more than that a slight change in legal theory does. As the Supreme Court has explained, "Obviously there are instances in which 'the ultimate

(continued...)

-13-

(Holmes, J.) (where state court rejected an ineffective assistance of counsel claim without considering the petitioner's proffered evidence, the court "was deciding a different issue from what is before us"); *Torres v. Lytle*, 461 F.3d 1303, 1312 (10th Cir. 2006) (Hartz, J.) ("Although ordinarily we would review Mr. Torres's habeas claim on that same record and give the state court's ruling the usual AEDPA deference, we are now considering the trial transcript, which was not presented to the [state court]. Accordingly, we may not be deciding the same legal issue decided by the [state court], at least if the trial transcript provides substantial evidence not in Mr. Torres's pleadings with the [state court].").

As the panel noted, *Wilson*, 536 F.3d at 1079, this does not mean that the state court fails to reach the merits in every case in which it denies the defendant's motion for an evidentiary hearing under Rule 3.11(B)(3)(b). In some cases, the OCCA first analyzes the proffered non-record evidence against the *Strickland* standard, concludes that even if admitted the evidence would not entitle the petitioner to habeas relief, and then denies the motion for an evidentiary hearing. *See, e.g. Welch v. State*, 2 P.3d 356, 376–77 (Okla. Crim.

---

[1](...continued)
question for disposition' will be the same despite variations in the legal theory *or factual allegations urged in its support.*" *Picard v. Connor*, 404 U.S. 270, 277 (1971) (quoting *United States ex rel. Kemp v. Pate*, 359 F.2d 749, 751 (7th Cir. 1966)) (emphasis added). The question is a practical one, here as in other contexts where it matters whether a particular "claim" has been adjudicated: was "the substance of [the] federal habeas corpus claim . . . presented to the state courts"? *Id.* at 278. *See Demarest v. Price*, 130 F.3d 922, 938–39 (10th Cir. 1997).

App. 2000); *Bland v. State*, 4 P.3d 702, 732–34 (Okla. Crim. App. 2000) (analyzing proffered evidence in detail, finding that it did not amount to evidence of ineffectiveness because it would not have "impacted the outcome of the trial," and then additionally denying the evidentiary hearing).  The decisions in these cases are treated as decisions on the merits for purposes of AEDPA deference. *See Welch v. Sirmons*, 451 F.3d 675, 704, 708–09 (10th Cir. 2006) (OCCA referred to the proffered affidavits in the course of denying the ineffectiveness claim); *Bland v. Sirmons*, 459 F.3d 999, 1030 (10th Cir. 2006) (the OCCA "[e]xamin[ed] the affidavits that would be proffered at such a[n] [evidentiary] hearing.").  The reason they constitute decisions on the merits is that the OCCA in these cases applies the *Strickland* standard to the evidence, without regard to the additional "clear and convincing evidence" hurdle of Rule 3.11(B)(3)(b).  In the cases now under review, however, the OCCA denied relief solely by reference to the record evidence.  In these cases, unlike *Welch* and *Bland*, the OCCA did not render an alternative holding that the petitioners would not be entitled to relief even if the proffered evidence were admitted and considered.

When the state court relies solely upon the record evidence, and denies both the claim itself and an evidentiary hearing on the proffered non-record evidence without any alternative holding based upon the proffered evidence, there is no adjudication on the merits that would warrant deferential review.  A merits adjudication requires the court to consider the "substance" of the defendant's

-15-

claim, *Gray*, 518 U.S. at 163, citing *Picard v. Connor*, 404 U.S. 270, 278 (1971), and when the claim involves a mixed question of law and fact but a procedural rule prevents the state court from even considering the factual grounds, the court has failed to do so.

In this respect, the "exhaustion" and "adjudicated on the merits" elements of federal habeas practice are mirror images. To satisfy the exhaustion requirement, a prisoner must afford the state court the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim," *Picard*, 404 U.S. at 277 (quotation omitted; brackets in original), which entails presentation both of the facts on which he bases his claim and the constitutional claim itself. *Hawkins v. Mullins*, 291 F.3d 658, 669–70 (10th Cir. 2002); *see also Gray*, 518 U.S. at 162–63; *Demarest*, 130 F.3d at 938–39. To be entitled to deference under AEDPA, the state court must similarly decide the "substance" of the claim, which means to "apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Picard*, 404 U.S. at 277. To dispose of a claim without considering the facts supporting it is not a decision on the merits.

Our interpretation comports with the general purposes and structure of AEDPA as well as its language. While that statute vindicates goals such as federalism and comity by affording great deference to state court decisions, it prescribes deference only for decisions the state court has actually made. These purposes are not served when the state court has never considered the substance

-16-

of the claim in the first place. No court will have yet evaluated the evidence (evidence which, in the *Strickland* context, often comprises the entirety of the claim, as the evidence of ineffectiveness based on the failure to investigate usually comes to light only after the trial) and thus there is no prior evaluation of the claim that would deserve the kind of deference AEDPA provides. As the federal court would be the first court "to apply controlling legal principles to the facts bearing upon [his] constitutional claim," *Picard*, 404 U.S. at 277 (quotation omitted; brackets in original), its ruling would show no disrespect to any contrary dispensation from the state court. AEDPA entitles a defendant to receive de novo review of his federal claim from *some* court, so long as he is diligent and timely in presenting his claim. If the state court does not perform this review because it has limited its review to the trial record, and the federal court does not perform this review because it nonetheless defers to the state court's judgment, then de novo review will never be performed.

In sum, AEDPA requires us to defer to the state court "with respect to any claim that was adjudicated on the merits," but an ineffectiveness claim has not been adjudicated on the merits when the state court failed to consider the evidence on which the defendant based his claim. So long as that defendant was diligent in presenting his evidence to the state court and otherwise satisfies AEDPA's requirements, the federal court will review the claim de novo.

2. *Arguments in the Dissents*

-17-

The dissents urge us to regard the OCCA's decisions in these cases as "on the merits." They offer two versions of the argument. First, when the OCCA denied Mr. Wilson's and Mr. Wackerly's claims of ineffective assistance of counsel, this was "on the merits" even if the court did not consider the evidence the petitioners put forward. Such an adjudication might be wrong, they seem to argue, but it was nonetheless "on the merits." Second, when the OCCA decided not to grant these petitioners an evidentiary hearing under Rule 3.11, the court necessarily determined that the proffered affidavits were not clear and convincing of a strong possibility that counsel was ineffective. This, too, the dissenters regard as an adjudication on the merits of the petitioners' *Strickland* claims.

We have already explained why this court has traditionally refused to regard a decision as "on the merits" when it fails to consider the substance of the claim. But even if we were to agree, arguendo, that the OCCA's decisions in these cases were on the merits, it would necessarily follow that each would be reversed on the ground that it "was contrary to . . . clearly established Federal law." 28 U.S.C. § 2254(d)(1). To decide a legal claim without regard to the evidence is surely unreasonable. *See Williams v. Taylor*, 529 U.S. 362, 416 (2000) (O'Connor, J., concurring) ("The [state court's] decision reveals an obvious failure to consider the totality of the omitted mitigation evidence" and therefore "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." (citations

-18-

omitted)). To decide the claim by reference to a higher standard of proof than is imposed by federal law is no less erroneous. *Strickland* requires a petitioner to "show, by a preponderance of the evidence, that (1) counsel's performance fell below an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." *Young v. Sirmons*, 486 F.3d 655, 680 (10th Cir. 2007). As we elaborate in the next section of this opinion, Rule 3.11's "clear and convincing evidence" standard is more demanding than *Strickland*'s "preponderance of the evidence" standard; therefore, any decision based on the former standard would be contrary to clearly established federal law. *See id.* ("[I]f the OCCA used the wrong standard in evaluating Young's claim, the district court owed the OCCA no deference and properly conducted an evidentiary hearing on this matter."); *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) ("[AEDPA deference] does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue." (citing *Revilla v. Gibson*, 283 F.3d 1203, 1220 n.14 (10th Cir. 2002)). Thus, the dissenters' interpretation of "on the merits" would lead to the same outcome, by a more circuitous course.

The dissents express concern that our approach will allow habeas petitioners to circumvent state remedies and improperly obtain de novo review in federal court by the expedient of holding back evidence from the state court and then presenting it in federal court. *See* Tymkovich dissent at 11 ("[T]he majority

suggests that every time a habeas petitioner submits new evidence in federal court, the evidence amounts to a new constitutional 'claim' that has never been adjudicated.").

We believe these concerns are greatly exaggerated. AEDPA itself contains safeguards against the dissenters' feared strategy. First, a petitioner must diligently develop the factual basis of his claim in state court before he is permitted to receive an evidentiary hearing before the federal court. *Michael Williams v. Taylor*, 529 U.S. 420, 437 (2000). If a petitioner could have produced certain evidence with due diligence, but did not do so, the state is entitled to oppose presentation of new evidence in federal court on that ground. Relatedly, a state prisoner generally must exhaust available state-court remedies before a federal court can consider a habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). A claim has been exhausted when it has been "fairly presented" to the state court. *Picard*, 404 U.S. at 275. "Fair presentation" means that the substance of the claim must be raised in state court. The allegations and supporting evidence must offer the state courts "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citing *Picard*, 404 U.S. at 276–77). Thus, although a habeas petitioner will be allowed to present "'bits of evidence'" to a federal court that were not presented to the state court that first considered his claim, evidence that places the claims in

a significantly different legal posture must first be presented to the state courts. *Hawkins,* 291 F.3d at 670 (quoting *Demarest,* 130 F.3d at 932 (further quotations omitted)). These provisions of AEDPA are designed to "give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In light of these safeguards, we see little risk that habeas petitioners will misapply the majority's holding to obtain unwarranted de novo review in the federal courts. The dissents' worry that our holding contradicts the structure of § 2254, Gorsuch diss. at 9, is without foundation.

### 3. *Arguments based on the decisions of this and other courts*

The State points out that another circuit has expressly rejected our approach in *Miller* and accorded AEDPA deference to a state court's ineffectiveness determination even when that court had not considered the non-record evidence. *Valdez v. Cockrell*, 274 F.3d 941, 953–54 (5th Cir. 2001).[2] The Supreme Court

---

[2]The State also cites *Matheney v. Anderson*, 377 F.3d 740, 747 (7th Cir. 2004) as evidence that the Seventh Circuit has joined the other side of this circuit split. Aple. 50, 51. In doing so, the State reads *Matheney* too broadly. First of all, *Matheney* was a strange case with a complicated procedural posture in which the court had erroneously ordered a federal evidentiary hearing in an earlier iteration. Second, it was not a case where the state court had failed to consider material non-record evidence; it was a case where there were dueling evidentiary hearings, one from the state court and one from the district court. The Seventh Circuit held that "§ 2254(d) is applicable even though the district judge held an evidentiary hearing," noting that although "[t]he evidence obtained in such a hearing is quite likely to bear on the reasonableness of the state courts' adjudication . . . [there is no reason] why it should alter the *standard* of federal

(continued...)

recently granted certiorari to resolve this split, *Bell v. Kelly*, --- U.S. ----, 128

S.Ct. 2108 (2008), although it later concluded that the writ had been

improvidently granted. *Bell v. Kelly*, 129 S.Ct. 393 (2008). The State urges us to

mend the split by adopting the Fifth Circuit's position.

We recognize that *Valdez* explicitly takes issue with our decision in *Miller*,

but pause to note that the *Valdez* decision is not necessarily in conflict with our

holding today. In *Valdez*, the state court misplaced certain exhibits offered by the

petitioner in support of his habeas claim, and the court stated that it had not read

the transcripts of the trial in their entirety. No party in the case questioned that

the state court had adjudicated the petitioner's claim "on the merits"; the question

before the Fifth Circuit was whether these flaws in the state court process had

denied the petitioner a "full and fair hearing." The Fifth Circuit held that AEDPA

does not require that the state accord the petitioner a full and fair hearing as a

prerequisite for AEDPA deference. Thus, the Fifth Circuit did not hold that the

state court decision was not "on the merits." Moreover, the Fifth Circuit noted

[2](...continued)
review." *Id*. (quotations omitted). Thus, *Matheney* seems to say only that the existence of an independent federal evidentiary hearing does not in itself necessitate de novo review of the state court's conclusions. It does not speak to the situation where the state court failed to fully consider the material evidence. Similarly, the Second Circuit case of *Wilson v. Mazzuca*, 570 F.3d 490, 499–500 (2d Cir. 2009), cited by the dissent, does not consider whether or not the state court made an adjudication on the merits, but instead asks how new evidence brought at habeas should affect the federal court's evaluation of the state court's decision given that there was an adjudication on the merits.

that "the state habeas record below contained sufficient descriptions of the remaining missing exhibits to inform the district court of their probative value," *id.* at 957, and the state court judge was apprised of the relevant portions of the trial transcript because they were quoted "at length" in the habeas petition, *id.* at 960 (Dennis, J., dissenting). Based on the court's description of the record in that case, it thus appears that the state court reached the substance of the petitioner's claims notwithstanding the loss of the exhibits and the failure of the judge to read the entire transcript. It is therefore not clear that *Valdez* would be resolved differently based on our holding today. To the extent that our reasoning differs from that of the Fifth Circuit, we adhere to our view for the reasons already stated.

The State also argues that, whatever logic our position might have held when we first announced it in *Miller*, the Supreme Court's subsequent decision in *Schriro v. Landrigan*, 550 U.S. 465 (2007), somehow overruled it. We do not agree. While *Schriro* emphasizes the importance of following AEDPA's deferential standards when reviewing a state court decision, in that case the state court had actually considered the relevant evidence when making its decision. Mr. Landrigan claimed that his trial counsel had failed to investigate mitigating evidence, but the factual dispute in that case concerned whether or not he had instructed his counsel *not* to investigate such evidence in the first place. The state appellate court reviewed the relevant evidence and found that Mr. Landrigan

had indeed informed his counsel not to investigate; the federal court reviewed the same evidence and disagreed. *Id.* at 469–73. While "AEDPA . . . requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence,'" at 473–74, that principle does not necessarily require us to apply the same deference when the state court has failed even to consider the evidence. While *Schriro* continues to emphasize the importance of deference when deference is due, it does not suggest that such deference is applicable when the state court has failed to consider the full merits of the claim.

The holding we announce today is not new. It reaffirms what has been this circuit's position for some time. *See Bryan v. Mullin*, 335 F.3d 1207, 1215–16 (10th Cir. 2003) (en banc); *Miller* 161 F.3d at 1254. *Bryan* was an en banc decision of this court. The en banc court explicitly held that because the state court record lacked material evidence bearing on the deficiency of counsel's performance, despite the petitioner's diligence in putting that evidence before the court, review of the claim would be de novo. 335 F.3d at 1215-16. In reaching that holding, the court acknowledged the contrary decision of the Fifth Circuit in *Valdez*. Although there was a vigorous dissent as to the result in *Bryan*, the dissenters joined this part of the *Bryan* majority, making its holding on this point unanimous. *Id.* at 1228 (Henry, J., dissenting in part). Nothing has changed in the six years since *Bryan* to call that unanimous holding into question.

Although the principal dissent tries to characterize *Miller* and *Bryan* as faulty applications of pre-AEDPA law, the opinions in both cases state that they were interpreting AEDPA and, for the reasons discussed above, both comport with the language and goals of that statute. Though *Miller* was decided close in time to the passage of AEDPA, it remains the law of this circuit; the Supreme Court later upheld *Miller's* principal holding: that the restrictions in § 2254(e) are inapplicable when the petitioner requested and the state court denied an evidentiary hearing. *See Williams*, 529 U.S. at 432 ("Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel. In this we agree with the Court of Appeals and with all other courts of appeals which have addressed the issue." (collecting cases and citing *Miller*, 161 F.3d at 1253)). In any event, we adopt our holding today based on the language, structure, and purposes of AEDPA; thus, the precedential backdrop of *Miller* and *Bryan* is now beside the point.

**B.  Is Rule 3.11's Standard Higher Than the Constitutional Standard?**

While the OCCA's actual *Strickland* determination is not an adjudication on the merits when Rule 3.11 has barred consideration of material evidence, there is still the possibility that that denial of the evidentiary hearing itself constitutes an adjudication on the merits. The denial of an evidentiary hearing under Rule 3.11, after all, requires the OCCA to consider the non-record evidence that the

defendant has proffered. If the standard that Rule 3.11 establishes for granting an evidentiary hearing either replicates or is lower than the constitutional standard, then the OCCA's denial of an evidentiary hearing would constitute an adjudication on the merits to which the federal courts owe deference.

To succeed on a *Strickland* claim, the federal standard requires a petitioner "show, by a preponderance of the evidence, that (1) counsel's performance fell bellow an objective standard of reasonableness, and (2) prejudice, such that there is a reasonable probability that but for counsel's errors, the outcome of the trial would have been different." *Young v. Sirmons*, 486 F.3d 655, 680 (10th Cir. 2007). Rule 3.11, in contrast, grants an evidentiary hearing if the defendant shows "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Thus Rule 3.11's standard poses a lower substantive standard (the defendant need show only a "strong possibility" of ineffectiveness) but a higher evidentiary standard (the evidence must be "clear and convincing" rather than simply a "preponderance"). "Although the interplay of these two standards—one more demanding, one less demanding than the federal—is not clear, we cannot conclude that when the state court denies an evidentiary hearing under Rule 3.11 it has necessarily decided that the federal standard was not satisfied." *Wilson*, 536 F.3d at 1081.

Evidentiary burdens are hardly meaningless and could easily be decisive in determining whether a defendant receives an evidentiary hearing. Suppose a defendant alleges that his lawyer failed to investigate an avenue of defense suggested by the defendants. If true, that would entitle him to habeas relief. But further suppose the lawyer denies that this defendant had made any such suggestion, and that the evidence as to who is telling the truth is merely in equipoise. In such a case, the proffered evidence could very well suggest that the lawyer's performance had indeed been deficient, but it might do so only by a preponderance. While such evidence would entitle the defendant to an evidentiary hearing under the federal standard, it would not meet the "clear and convincing" threshold that Rule 3.11 prescribes. Evidentiary burdens are not independent from substantive standards; the two interact. When that interaction could result in the denial of a hearing under the state standard, even though the federal standard would have granted a hearing in the very same case, we cannot say that the state court necessarily determined that the federal standard could not be met.

The State has tried to dispute that Rule 3.11's "clear and convincing" standard actually creates a higher evidentiary burden, arguing that "the 'clear and convincing' component of the Rule 3.11 standard is reasonably read as being akin to the general burden of proof required to prove up factual contentions in state capital post-conviction proceedings." Aple. 35. It argues that "clear and

convincing" simply goes to the quality of the evidence, requiring more than "speculation, second guesses or innuendo," *Jones v. State*, 201 P.3d 869, 890 (Okla. Crim. App. 2009), and does not go to the weight of that evidence. In other words, despite the "clear and convincing" standard's long history as an intermediate burden of proof somewhere between "preponderance of the evidence" and "beyond a reasonable doubt," *see Addington v. Texas*, 441 U.S. 418, 424–25 (1979) (discussing the prevalence of this "intermediate standard"), as Rule 3.11 uses it "clear and convincing" is no more burdensome than the simple preponderance standard used by the federal courts.

We see no reason to think that the "clear and convincing" standard operates any differently in the Rule 3.11 context than anywhere else in the law. The OCCA has acknowledged the difference between "clear and convincing" and a mere preponderance outside of the Rule 3.11 context, *see, e.g. Horn v. State*, 204 P.3d 777, 786 n.3 (Okla. Crim. App. 2009) (distinguishing between an Oklahoma evidentiary rule, which requires sexual propensity evidence be established by "clear and convincing evidence" before it can be admitted, and the federal rule, which requires only a preponderance of the evidence), as has the Supreme Court, *see Cooper v. Oklahoma*, 517 U.S. 348 (1996) (finding Oklahoma statute that required defendant to prove incompetence by "clear and convincing" rather than a "more likely than not" preponderance standard was too demanding and therefore unconstitutional). In fact, the standard is often required by due process in cases

where "the individual interests at stake . . . are both particularly important and more substantial than mere loss of money." *Id.* (quotations omitted); *see, e.g. Santosky v. Kramer*, 455 U.S. 745, 756 (1982) (termination of parental rights); *Addington*, 441 U.S. at 427 (involuntary civil commitment); *Woodby v. INS*, 385 U.S. 276, 286 (1966) (deportation); *Gonzales v. Landon*, 350 U.S. 920 (1955) (expatriation); *Schneiderman v. United States*, 320 U.S. 118, 123 (1943) (denaturalization); *United States v. Maxwell Land-Grant Co.*, 121 U.S. 325, 381 (1887) (land grant). AEDPA itself imposes a "clear and convincing" standard for certain evidentiary claims, 28 U.S.C. § 2254(e)(1). This shows that the two standards are different, and meaningfully so.

To verify that the Oklahoma standard is more difficult to satisfy, one need only look to empirical evidence where the state and federal courts have resolved identical requests for an evidentiary hearing. *See Bryan v. Mullin*, 335 F.3d 1207, 1215; *Mayes v. Gibson*, 210 F.3d 1284, 1289 (10th Cir. 2000); *Miller,* 161 F.3d at 1253-54, 1259; *see also (Kevin) Young v. Sirmons*, 486 F.3d 655, 679 (10th Cir. 2007). In each of these cases, the OCCA denied a request for an evidentiary hearing. When the federal court heard the identical request under the federal standard, the federal court granted a hearing. The Rule 3.11 standard is contrary to the federal one.

The State has pointed to no case in which the OCCA has equated the "clear and convincing" standard of Rule 3.11 with the preponderance standard of

*Strickland*. To be sure, the OCCA has sometimes rejected evidentiary hearings on the ground that the evidence presented is mere "speculation." *See, e.g.*, *Jones*, 201 P.3d at 890. But this does not mean that Rule 3.11's evidentiary burden will automatically be met so long as the evidence is more than speculative. "[A]dopting a standard of proof is more than an empty semantic exercise," *Addington*, 441 U.S. at 425 (quotations omitted), and we will not take the State's habeas counsel's word for it that an evidentiary standard as well-established as "clear and convincing" stands for a burden far less demanding here than it does anywhere else in the law.

Judge Gorsuch's dissent suggests that we certify this question to the Oklahoma court, but we cannot accept that suggestion. Even aside from the fact that no party has suggested that we certify,[3] we do not consider it appropriate in these circumstances. Federal courts may ask a state court to explain the meaning of a state law for the purpose of deciding a case in which we are required to apply that law. *See, e.g., Pino v. United States*, 507 F.3d 1233 (10th Cir. 2007) (explaining the purposes of certification). The question in this case, however, is not how we should interpret and apply the "clear and convincing" standard (which we would never have occasion to do) but what past decisions of the OCCA meant when they employed that standard. That is not what certification is for.

---

[3]When asked during oral argument if we should certify, counsel for the state responded that we "can," but "I don't think you need to."

Because Rule 3.11 creates a higher evidentiary burden than the federal standard, we cannot say that the OCCA's failure to grant an evidentiary hearing under this standard necessarily constitutes a determination that the defendant could not satisfy the federal standard.

**C. Application to Mr. Wilson and Mr. Wackerly**

Having identified when AEDPA deference is warranted and when it is not, it remains to be seen how these principles apply to the specific cases of Mr. Wilson and Mr. Wackerly. The crucial question for both is whether the state court considered the non-record evidence when it rendered its decision.

On direct appeal of his conviction and sentence to the OCCA, Mr. Wilson filed an application for an evidentiary hearing under Rule 3.11, seeking admission into the record of the affidavits he produced in support of his ineffective assistance of counsel claim. The State relied on the Rule to oppose supplementing the record. The State explained in its brief that "the information contained with the affidavits . . . are [sic] not being referred to in this brief as such affidavits are not part of the record on appeal." *Wilson*, 536 F.3d at 1081 (citing Brief of Respondent-Appellee at 70 n. 40, *Wilson v. State*, 983 P.2d 448 (Okla. Crim. App. 1998)). The OCCA ultimately agreed with the State. It rejected Mr. Wilson's ineffective assistance claim based on its "review of the trial record," *Wilson*, 983 P.2d at 472, and in a footnote denied Mr. Wilson's Rule 3.11 application to supplement the record, without comment. *Id.* at 472 n. 8. Unless

the court says otherwise, we presume the OCCA followed its own rule and made its ineffectiveness determination solely upon the record evidence. *See Dewberry*, 954 P.2d at 776 ("The record on appeal must remain as *only that* which has been presented through the trial court.") (emphasis added). In contrast with other OCCA decisions, *e.g. Welch*, 2 P.3d at 376–77; *Bland*, 4 P.3d at 732–34, the court made no reference to the substance of the non-record evidence in the course of its explanation for rejecting the motion for an evidentiary hearing. Counsel for the State conceded at oral argument before the panel that the affidavits were not part of the OCCA's *Strickland* determination. *Id.* The panel therefore found that "[t]he entirety of the OCCA's analysis of the *Strickland* issue was based on the court's review of the trial record." *Id.*

Before this en banc court, and despite its earlier concessions, the State for the first time contends that the OCCA did in fact refer to and consider the non-record evidence when it denied Mr. Wilson's *Strickland* claim. Although the OCCA's analysis of the claim was expressly based on "[a] review of the trial record," *Wilson*, 983 P.2d at 472, and the court made no reference to the proffered non-record evidence, the State points to these lines in the OCCA opinion:

> The mere fact more evidence could have been presented is not, in itself, sufficient to show counsel was deficient. Reynold's [sic] testimony was credible and well developed. We find [Mr. Wilson] has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence.

*Id.* (citations omitted). The State asks us to conclude that the words "specific evidence" in the final line were a reference to Mr. Wilson's proffered non-record evidence rather than to his general claim that more evidence should have been introduced. We regard this as less than obvious, especially in light of the State's contrary position both in state court and in oral argument before the panel. But in any event, in the current posture of this case we will not entertain the State's newly minted interpretation of the OCCA opinion. We granted en banc on the limited issue of how Rule 3.11 affects our standard of review on habeas. The State did not request and we did not grant review on the additional issue of whether the OCCA did, despite the proscriptions of Rule 3.11 and the State's characterization of the issues up until this point, consider the non-record evidence when it made its *Strickland* determination. We will not disturb the panel's ruling on this point.

The OCCA was more explicit in its use of Rule 3.11 when deciding Mr. Wackerly's claim. It cited the rule and then found that, while Mr. Wackerly had shown the court that "trial counsel could perhaps have accessed other information in preparing for trial," he "has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence." *Wackerly*, 12 P.3d at 14. It then declined his application for an evidentiary hearing. *Id.* This is an explicit application of the Rule 3.11 standard which, as discussed above, does not replicate the federal

standard and therefore does not constitute an adjudication on the merits as to whether Mr. Wackerly's non-record evidence could support his *Strickland* claim. A federal court therefore does not owe deference to the OCCA's rejection of Mr. Wackerly's ineffectiveness claim. We offer no opinion as to whether Mr. Wackerly's evidence does indeed support such a claim; that is an issue for the panel to resolve.

## III. CONCLUSION

When the OCCA, pursuant to Rule 3.11, refuses to grant an evidentiary hearing to consider material, non-record evidence of ineffective assistance of counsel that the defendant has diligently sought to develop, and then rules on the ineffectiveness claim without consideration of this evidence, the OCCA's denial of the claim is not an adjudication on the merits to which the federal courts owe AEDPA deference. We therefore **REINSTATE** the panel decision in *Wilson v. Sirmons* and we **REMAND** Mr. Wackerly's case to the panel for consideration in a manner consistent with this decision.

Wilson v. Workman, No. 06-5179; Wackerly v. Workman, Nos. 07-7034 & 07-7056

**BRISCOE, J.**, dissenting.

I join Part II.B of Judge Gorsuch's dissenting opinion and all but Part II.D of Judge Tymkovich's dissenting opinion.

I agree with Judge Gorsuch, as set forth in Part II.B of his dissenting opinion, that the best method of resolving the en banc questions now before us would be to certify to the Oklahoma Court of Criminal Appeals the question of what the phrase "clear and convincing evidence" means in the context of Rule 3.11. Short of that, however, I agree with the analysis of Rule 3.11 that is set forth in Part I of Judge Tymkovich's dissenting opinion.

I also agree with Judge Tymkovich that the majority is applying an unduly narrow definition to the phrase "adjudicated on the merits," as employed in 28 U.S.C. § 2254(d), and thus join Parts II.A, II.B, and II.C of his dissenting opinion. Contrary to the views expressed throughout Judge McConnell's opinion, I read the OCCA's rulings in both Wilson and Wackerly as indicating that it did consider the evidence proffered in support of each application for an evidentiary hearing. Further, it is erroneous to conclude that Rule 3.11 prohibits the OCCA from considering this proffered "non-record" evidence when the very language of Rule 3.11(B)(3)(b) requires, rather than forbids, its consideration:

> When an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify

evidence which could have been made available during the course of the trial, and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of Appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel.  This Court will utilize the following procedure in adjudicating applications regarding the ineffective assistance of trial counsel <u>based on evidence not in the record:</u>

> (I) In order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, the application <u>and affidavits</u> must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.

Rule of the Oklahoma Court of Criminal Appeals 3.11(B)(3)(b), Okla. Stat. Ann., tit. 22, ch. 18, app. (1999) (emphasis added).

My only disagreement with Judge Tymkovich concerns the analysis of our decision in <u>Bryan v. Mullin</u>, 335 F.3d 1207 (10th Cir. 2003 (en banc) set forth in Part II.D of his dissenting opinion.  While I firmly agree that <u>Bryan</u> does not support the majority's position, I disagree, for the reasons outlined below, that <u>Bryan</u> was wrongly decided.

From arraignment through trial, petitioner Bryan was represented by four different attorneys, the first and last of whom were retained.  The first attorney immediately expressed doubt as to Bryan's competency, and sought and was granted a jury trial on the issue of competency.  Bryan's family, however, could not afford to hire any medical experts, and the jury concluded that Bryan had failed to demonstrate that he was incompetent.  The first attorney subsequently

-2-

withdrew and the trial court appointed an attorney from OIDS, Wesley Gibson, to represent Bryan. Gibson hired a psychiatrist to evaluate Bryan, and the psychiatrist seriously questioned Bryan's competence to stand trial. Gibson suffered a stroke and was replaced by another OIDS attorney, Steven Hess. Hess hired Dr. Philip Murphy to conduct another examination of Bryan. Murphy concluded that Bryan suffered from a serious mental disorder and, like the psychiatrist, questioned Bryan's competency to stand trial. Based upon the opinions rendered by the psychiatrist and Dr. Murphy, Hess planned to mount an insanity defense. But, when Hess informed Bryan and his parents of this strategy, Bryan and his parents chose to replace Hess with a privately retained attorney, Jack Freeman. Although Freeman was provided with all of the medical reports prepared by the psychiatrist and Dr. Murphy, he ultimately did not present any mental health evidence during either phase of the trial.

On direct appeal, Bryan argued that Freeman was ineffective for failing to utilize the available mental health evidence during both the guilt and penalty phases of trial. In connection with this claim, Bryan filed an application for evidentiary hearing (presumably pursuant to Rule 3.11). Although Bryan submitted affidavits in support of his application, he did not, apparently, include an affidavit from Freeman.[1] The OCCA denied Bryan's ineffective assistance

---

[1] Our decision in <u>Bryan</u> does not identify the affiants; perhaps they were Bryan's appellate counsel.

claim on the merits and, in doing so, implicitly denied his application for an evidentiary hearing. In denying Bryan's ineffective assistance claim, the OCCA presumed that Freeman had made a strategic decision not to present any mental health evidence during the first stage proceedings. Bryan v. State, 935 P.2d 338, 362 (Okla. Crim. App. 1997). The OCCA also concluded that Freeman had legitimate "strategic reasons to avoid evidence of [Bryan's] psychological problems" during the second-stage proceedings. Id. at 363. Notably, however, the OCCA reached these conclusions without evidence from Freeman himself.

Bryan reasserted his ineffective assistance claim in his federal habeas proceedings and sought a federal evidentiary hearing. The district court granted him an evidentiary hearing on a different ineffective assistance issue (i.e., whether Freeman was operating under a conflict of interest because he had been retained by Bryan's parents and promised them he would not present any mental health evidence), and decided, in its discretion, to allow Bryan to also present evidence at the hearing concerning Freeman's strategy, or lack thereof, for failing to present mental health evidence at trial. At the evidentiary hearing, Freeman testified and explained his familiarity with the mental health evidence and his reasons for not presenting any of it at trial. According to Freeman, he chose to pursue a guilt phase defense of actual innocence because he believed the mental health evidence was insufficient to present a viable insanity defense. Further, Freeman testified that he chose not to present any mental health

-4-

evidence during the penalty phase because Bryan was vehemently opposed to the use of such evidence, Freeman thought such evidence would be ineffective following a guilt phase defense of actual innocence, and Freeman was concerned that such evidence would increase the likelihood of the jury finding, as alleged by the State, that Bryan was a continuing threat.

This court affirmed the district court's decision to afford Bryan an evidentiary hearing, concluding that Bryan had diligently sought to develop the factual basis of his ineffective assistance claim in state court by filing an application for an evidentiary hearing with the OCCA. 335 F.3d at 1215. In turn, because the resolution of Bryan's ineffective assistance claim hinged on evidence presented during the <u>federal</u> evidentiary hearing regarding Freeman's trial strategy, the court applied a de novo standard of review in analyzing that claim. <u>Id.</u> at 1216.

<u>Bryan</u> thus differs from <u>Wilson</u> and <u>Wackerly</u> in at least one critical respect: Bryan's Rule 3.11 application for an evidentiary hearing did not include all of the necessary evidence for resolution of his ineffective assistance claim. More specifically, Bryan apparently did not submit with his application an affidavit from Freeman "regarding what he [Freeman] knew and understood about Bryan's mental health history and, most importantly, why he [Freeman] decided not to utilize that evidence." 335 F.3d at 1215. Thus, the OCCA, in reviewing Bryan's Rule 3.11 application, was not privy to all of the evidence

necessary to resolve Bryan's ineffective assistance claim, and it ultimately made unsubstantiated assumptions regarding Freeman's knowledge and motives. In other words, the OCCA's decision was based on an "unreasonable determination of the facts in light of the evidence presented," 28 U.S.C. § 2254(d)(2), thus making it necessary for us to review Bryan's ineffective assistance claim de novo. See Brown v. Uphoff, 381 F.3d 1219, 1225 (10th Cir. 2004) (applying de novo review to petitioner's claim after first determining that Wyoming Supreme Court's reasoning was contrary to clearly established federal law).

In contrast, the petitioners in Wilson and Wackerly submitted in connection with their Rule 3.11 applications all of the mitigating evidence they asserted their respective trial attorneys should have investigated and introduced at trial. Thus, the OCCA, in reviewing the applications in Wilson and Wackerly, was privy to all of the non-record evidence relevant to resolution of the ineffective assistance claims at issue. As a result, the OCCA's decision was not, as it was in Bryan, "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In turn, there is no basis for us to apply a de novo standard of review to the ineffective assistance claims raised by these two petitioners.

*Wilson v. Workman*, No. 06-5179; *Wackerly v. Workman*, Nos. 07-7034 & 07-7056
**TYMKOVICH**, **J**., dissenting; **TACHA**, **J**., and **O'BRIEN**, **J**., joining;
**BRISCOE**, **J**., joining except for Part II.D; and **GORSUCH**, **J**., joining Parts II
and IV.

The majority makes two serious missteps in addressing the questions posed in this en banc matter. First, it erroneously construes Oklahoma Court of Criminal Appeals Rule 3.11 as imposing a more onerous burden on a criminal defendant than the standard for ineffective assistance of counsel outlined by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Second, in assessing the OCCA's application of Rule 3.11 in these two cases, the majority crafts an unduly narrow definition of "adjudication on the merits" that contravenes Supreme Court and other circuit precedent and sidelines the deferential standards of review outlined in the Antiterrorism and Effective Death Penalty Act (AEDPA).

As explained below, the OCCA, in the course of denying the petitioners' applications for evidentiary hearings pursuant to Rule 3.11, adjudicated the merits of the petitioners' ineffective assistance of counsel claims. Those adjudications are entitled to deference under AEDPA. Accordingly, I would affirm the district court's denial of Mr. Wilson's petition for habeas relief and remand Mr. Wackerly's appeal to the panel for consideration in light of AEDPA's deferential standard of review.

# I.  Oklahoma Rule 3.11

According to the majority, "Rule 3.11 creates a higher evidentiary burden than the federal standard" and for that reason, the OCCA's Rule 3.11 determinations are not adjudications on the merits that warrant AEDPA deference.[1]  Maj. Op. at 32; *see also Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005) (granting deference to a state court decision because the state standard was "at least as favorable" to the petitioner as the federal standard). This reading of Rule 3.11 is erroneous.  When properly read in context, the Rule does not supplant *Strickland*.  Instead, it implements the *Strickland* standard in a framework designed to adjudicate Oklahoma criminal defendants' constitutional claims fairly and efficiently on direct appeal.

As a matter of policy, Rule 3.11 requires criminal defendants to bring their *Strickland* claims on direct appeal rather than in post-conviction proceedings and

---

[1]  The relevant portions of Rule 3.11 in effect at the time of petitioners' direct appeals to the OCCA are set forth in an appendix attached to this opinion. The substantive standard in Rule 3.11, which I believe the majority misconstrues, is as follows:

> In order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, *the application and affidavits must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.*

Rule of the Oklahoma Court of Criminal Appeals 3.11(B)(3)(b)(i), Okla. Stat. Ann., tit. 22, ch. 18, app. (1999) (emphasis added).

to lay their evidentiary cards on the table before the OCCA. This avoids the inefficiency of multiple proceedings and ensures *Strickland* claims in Oklahoma are evaluated when evidence is fresh and more reliable. *See Murray v. Carrier*, 477 U.S. 478, 520 (1986) ("Each State's complement of procedural rules . . . channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." (quoting *Reed v. Ross*, 468 U.S. 1, 10 (1984))); *cf. Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (AEDPA's purpose was to "reduce delays in the execution of state and federal criminal sentences, particularly in capital cases"). Nothing is suspect about this procedure. The Constitution does not even require states to provide post-conviction review. *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987).

The Rule also serves a simple gate-keeping role. If a defendant's proffer under Rule 3.11 is so weak that it does not merit an evidentiary hearing, the request for a hearing will be denied, along with the defendant's *Strickland* claim. In denying the claim, the Oklahoma court will necessarily examine the evidence submitted and consider its probative value.[2] Thus, construing Rule 3.11 as

---

[2] The OCCA's denial of a Rule 3.11 application is analogous to a grant of summary judgment for the state. Under Rule 3.11, the defendant must argue there is an issue of fact that deserves a state court evidentiary hearing, which pursuant to the Rule is similar to a full trial. *See* Rule 3.11(B)(3)(b)(ii)–(iii); *cf. Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) ("The purpose of a summary judgment motion is to assess whether a trial is necessary."). If—in light

(continued...)

somehow operating outside the *Strickland* framework defies logic: a conscientious appellate judge reviewing a Rule 3.11 motion would evaluate the motion, and the evidence submitted with it, in light of the pending *Strickland* claim.[3] Indeed, the Rule echoes the *Strickland* standard and even borrows language from Supreme Court precedent regarding ineffective assistance. *Compare* Rule 3.11(B)(3)(b)(i) (requiring a defendant to rebut "the strong presumptions of regularity of trial proceedings and competency of trial counsel") *with Strickland v. Washington*, 466 U.S. 668, 689 (1984) ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.").

Critical to our resolution of these en banc proceedings are the standards set forth in Rule 3.11(B)(3)(b)(i), which provide that an "application [for evidentiary

---

[2](...continued)
of the relevant facts—the OCCA determines that no hearing is necessary because the state prevails as a matter of law, the OCCA will deny the Rule 3.11 application and thereby deny the defendant relief for ineffective assistance of counsel. *Cf. Berry*, 490 F.3d at 1223 ("[T]he evidence offered by [plaintiff] is insufficient to warrant submission of the issue to a jury. . . . As a result, the district court properly awarded summary judgment to [defendant] on this claim.").

[3] In fact, Rule 3.11 requires the OCCA to make the same evaluation a federal court would make in deciding whether a habeas petitioner's proffer of non-record evidence merits an evidentiary hearing to flesh it out. *Cf. Hammon v. Ward*, 466 F.3d 919, 927 (10th Cir. 2006). Weak or speculative allegations, or those contravened by the trial record, will not lead to a hearing in federal court. *See Schriro v. Landrigan*, 550 U.S. 465, 474–75 (2007). Thus, nothing is inherently wrong in looking at the weight of such evidence in evaluating the worthiness of the allegation.

hearing] and [supporting] affidavits must contain sufficient information to show [the OCCA] by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Obviously, this language includes a substantive standard that a criminal defendant must meet in order to obtain an evidentiary hearing, i.e., the establishment of "a strong possibility trial counsel was ineffective."

Viewed by itself, the Rule 3.11 standard is undoubtedly lower than the standard set forth in *Strickland*. Rule 3.11 requires a defendant to demonstrate only "a strong possibility" of ineffective assistance, rather than *actual* ineffective assistance. Something less than absolute certainty suffices under the Rule's plain language. *See generally Webster's Third New International Dictionary* 1771 (2002) (defining "possibility" as "the character, condition, or fact of being possible whether theoretically, in general, or under a specified set of conditions"). The phrase "strong possibility" thus echoes Rule 3.11's purpose: providing for summary review of *Strickland* claims before restarting the cumbersome fact-finding machinery of the trial court. *Cf. Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) (holding that AEDPA does not allow "federal habeas applicants to develop even the most insubstantial factual allegations in evidentiary hearings," and noting that AEDPA was meant to "prevent 'retrials' on federal habeas" (quoting (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 386 (2000))).

The Rule also, however, employs the phrase "clear and convincing evidence." The majority seizes upon this language, relying on it to conclude Rule 3.11 is incompatible with *Strickland*. Read in context, the phrase should not be interpreted this way.

The phrase "clear and convincing," like the phrase "preponderance of the evidence," when applied by courts "is customarily used to prescribe one possible burden or standard of proof before a trier of fact in the first instance." *Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993); *see also Black's Law Dictionary* 596 (8th ed. 2004). But "[b]efore any such burden can be satisfied in the first instance, the factfinder must evaluate the raw evidence, finding it to be sufficiently reliable and sufficiently probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty." *Concrete Pipe*, 508 U.S. at 622. In other words, "clear and convincing evidence" simply establishes how certain the OCCA must be that the substantive standard (i.e., a strong possibility of ineffective assistance) has been met. *See* S. Childress & M. Davis, 1-3 *Federal Standards of Review* § 3.06 (2008).

It is unreasonable to conclude that the "clear and convincing" language heightens the substantive standard employed in Rule 3.11. The only reasonable conclusion to be drawn from the Rule's language is that the "clear and convincing evidence" standard was intended by the OCCA simply to characterize

-6-

the *type* of evidence required, i.e., evidence that is highly reliable and of significant probative value. Indeed, a close examination of Oklahoma law confirms this view. The OCCA teaches that "to meet the 'clear and convincing' standard . . . [an] Appellant must present this Court with evidence, not speculation, second guesses or innuendo." *Jones v. State*, 201 P.3d 869, 890 (Okla. Crim. App. 2009). The Rule simply forces defendants to lay out the evidence supporting their *Strickland* claims and, in turn, prevents litigants from wasting the OCCA's time with mere speculation or lawyer argument.

The combination of Rule 3.11's two standards—"strong possibility" and "clear and convincing"—may result from "the hybrid nature of the . . . proceeding in which [they are] supposed to be applied." *Concrete Pipe*, 508 U.S. at 623. Ordinarily, the OCCA functions as a reviewing body, assessing the soundness of factual and legal determinations made in the first instance by Oklahoma state trial courts. But when assessing an application for an evidentiary hearing under Rule 3.11, the OCCA is the first court to examine the extra-record evidence presented by the defendant/applicant and to determine the reliability and probative value of that evidence. Presumably, the OCCA, in formulating Rule 3.11, intended for the "clear and convincing evidence" standard to simply add a degree of reliability to the determination of whether the

substantive standard (i.e., "strong possibility" of ineffectiveness) has been satisfied.[4]

Moreover, in light of the purpose and structure of Rule 3.11, it is reasonable to conclude that the standard set forth in the Rule was intended to be, and must be construed as, less demanding than the *Strickland* standard itself. If the Rule 3.11 standard were more stringent than (or even equivalent to) *Strickland*, there would be no need for an evidentiary hearing in the state trial court after the OCCA granted a defendant's Rule 3.11 application. The trial court would merely be analyzing the same allegations under the less-onerous *Strickland* standard. But the Rule *requires* the OCCA to remand the case to the state trial court for an evidentiary hearing if a defendant satisfies the standard set forth in Rule 3.11(B)(3)(b)(i). After the hearing, the case is returned to the OCCA for final adjudication, where the factual and legal findings of the trial court "shall be given strong deference." Rule 3.11(B)(3)(b)(iv). The majority's interpretation of Rule 3.11's substantive standard renders this entire procedure a nullity.

---

[4] It is worth noting that the Supreme Court has been able to reconcile competing substantive standards in the context of habeas review. *See Sawyer v. Whitley*, 505 U.S. 333, 348 (1992) ("Therefore, we must determine if petitioner has shown by clear and convincing evidence that but for constitutional error, no reasonable juror would find him eligible for the death penalty under Louisiana law."). Thus, the only reasonable conclusion to be drawn in this case is that the two standards employed in Rule 3.11(B)(3)(b)(i)—"clear and convincing evidence" and a "strong possibility" of ineffective assistance—are compatible with each other and are capable of being applied as intended by the OCCA.

To shore up its claim that the "Rule 3.11 standard is contrary to the federal one," the majority points to several cases where the OCCA denied evidentiary hearings and we did not. Maj. Op. at 30–31. Putting aside the questionable empirical accuracy of this approach, it proves nothing. AEDPA does not require a *correct* decision by a state court—it merely requires an adjudication on the merits.

In any event, the tension between the "clear and convincing" and "strong possibility" language in Rule 3.11 should be resolved by invoking considerations of comity—not by viewing Oklahoma law with skepticism. *See Holland v. Jackson*, 542 U.S. 649, 655 (2004) (per curiam) (requiring habeas courts to give state court decisions "the benefit of the doubt," and noting the "presumption that state courts know and follow the law" (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam))). Rule 3.11 is a "good-faith attempt[]" by Oklahoma "to honor [a criminal defendant's] constitutional rights," not a mechanism to unfairly marginalize legitimate ineffectiveness claims. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)).

\* \* \*

In sum, two conclusions follow from this analysis.

*First*, in denying an application for an evidentiary hearing under Rule 3.11(B)(3)(b), the OCCA applies the standards outlined in Rule 3.11(B)(3)(b)(i) to the non-record evidence submitted by a defendant in connection with the

-9-

application. Its denial should be deemed an "adjudication on the merits" for purposes of 28 U.S.C. § 2254(d)(1). In determining whether a defendant/applicant has established "a strong possibility trial counsel was ineffective," the OCCA must necessarily consider and apply the *Strickland* test to the non-record evidence submitted by the defendant/applicant. And because the substantive standard utilized by Rule 3.11 is less demanding than the *Strickland* test itself—i.e., because it merely requires a "strong possibility," rather than the actual establishment, of ineffective assistance—a determination by the OCCA that the applicant has failed to satisfy the Rule 3.11 standard necessarily means that the OCCA has concluded that the defendant/applicant could not ultimately prevail on the merits of his ineffective assistance claim. Thus, any such determination should be entitled to deference by a federal habeas court under § 2254(d)(1).

*Second*, the OCCA's failure in a given case to specifically cite or analyze the defendant's proffered non-record evidence should have no impact on the conclusion reached above, i.e., that the OCCA's decision to deny an evidentiary hearing under Rule 3.11 should be entitled to deference by a federal habeas court. Supreme Court and Tenth Circuit precedent we discuss below from related habeas contexts holds that a state court makes a "determination on the merits" for purposes of § 2254(d)(1) even if the state court's decision is summary in nature and does not reveal the court's reasoning. *See Early v.*

-10-

*Packer*, 537 U.S. 3, 9 (2002) (indicating that if the "fair import" of a state court's decision is that it considered and applied the controlling standards, then its decision is subject to deference under § 2254(d)(1)); *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003) ("Even if a state court resolves a claim in a summary fashion with little or no reasoning, we owe deference to the state court's result.").

In our order granting en banc review, we asked petitioners "[w]hat effect, if any, does the extent of the OCCA's discussion of the Rule 3.11 motion, and the proffered non-record evidence, have on whether the OCCA's decision on the petitioner's ineffective assistance of counsel claim is entitled to deference under § 2254(d)(1)?" For the reasons discussed above, the simple answer to this question is "none."

## II. Adjudication on the Merits

In addition to its cramped reading of Rule 3.11, the majority also disregards well-established precedent outlining when a state court decision is to be considered an "adjudication on the merits." In so doing, the majority suggests that every time a habeas petitioner submits new evidence in federal court, the evidence amounts to a new constitutional "claim" that has never been adjudicated. This interpretation of key language from AEDPA is erroneous and contrary to our precedent.

Under a proper reading of AEDPA, a state court adjudication of a claim occurs when the court decides a case on substantive rather than procedural grounds, such that the decision would have preclusive effect in later litigation.[5] This is how the OCCA resolved petitioners' claims here. The Oklahoma court did not avoid the merits of petitioners' ineffective assistance claims, but instead ruled that the claims lacked legal merit. Accordingly, the OCCA's decisions were adjudications on the merits and should be given AEDPA deference.

**A.**

Section 2254(d) generally requires a federal court to defer to "any *claim that was adjudicated on the merits* in State court proceedings." 28 U.S.C. § 2254(d) (emphasis added). "'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001). As a result, "§ 2254(d) applies regardless of the procedures employed or the decision reached by the state court, as long as a substantive decision *was* reached; the

---

[5] Although there is a procedural component to an OCCA Rule 3.11 ruling, in that the OCCA thus denies the defendant's application for evidentiary hearing and no further proceedings are conducted on the issue, the ruling is not, for the reasons discussed above, strictly procedural. A Rule 3.11 decision involves a substantive examination of the defendant/applicant's ineffective assistance claim. It would not make sense to shield that substantive examination from AEDPA deference on the grounds that the state court was simply issuing a procedural ruling.

adequacy of the procedures and of the decision are addressed through the lens of § 2254(d), not as a threshold matter." *Teti v. Bender*, 507 F.3d 50, 57 (1st Cir. 2007), *cert. denied*, 128 S. Ct. 1719 (2008) (emphasis in original).

Importantly, "[n]othing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process." *Sellan*, 261 F.3d at 311. Even a "summary decision" lacking "cursory reasoning . . . constitute[s] an 'adjudication on the merits'." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). We simply "look to the state court's result and defer to it . . . where analysis is lacking." *Id*.

In turn, what constitutes a "claim" is also well settled. In the context of preclusion, a claim consists of a legal theory that justifies judgment in a party's favor. While a party must usually submit evidence to support a claim, the claim exists apart from this evidence. *See, e.g.*, 18 Charles Alan Wright et al., *Federal Practice & Procedure* § 4408 (2d ed. 2009) ("Simply offering to provide new evidence does not establish a new claim, even if the evidence could not have been produced at the time of the first trial."); *see also Saylor v. United States*, 315 F.3d 664, 668 (6th Cir. 2003) ("The fact that appellants' new evidence might change the outcome of the case does not affect application of [the] claim preclusion doctrine.").

This standard definition pertains to the habeas context. The Supreme Court has stated that "a 'claim' . . . is an asserted federal basis for relief from a

state court's judgment of conviction." *Gonzales v. Crosby*, 545 U.S. 524, 530 (2005). A petitioner "might seek leave to present 'newly discovered evidence' in support of a *claim* previously denied." *Id*. at 531 (emphasis added; citation omitted). But nothing suggests the new evidence would somehow create a new claim.

Additionally, in *Schriro v. Landrigan*, the Supreme Court held that a federal district court must accord deference to a state adjudication denying a *Strickland* claim even when the district court "expand[s] the record to include *additional* evidence offered by [the habeas petitioner]." 550 U.S. 465, 468–69 (2007) (emphasis added). *Schriro* further underscores that new evidence presented to a federal court in a habeas proceeding does not create a new constitutional claim out of whole cloth.

In short, as a textual matter and pursuant to Supreme Court precedent, the OCCA's resolution on direct appeal of an ineffective assistance of counsel claim is an adjudication on the merits under AEDPA.

**B.**

Other circuits have addressed this question and have reached a conclusion contrary to the majority's. For example, the Fifth Circuit in *Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001), rejected the approach advocated by the majority, concluding that a "new evidence" rule "would have the untenable result of rendering the amendments enacted by Congress a nullity." Rather, the term

-14-

"'adjudication on the merits' . . . refers solely to whether the state court reached a conclusion as to the substantive matter of a claim, as opposed to disposing of the matter for procedural reasons. . . . This mandatory and all-encompassing language . . . leaves no room for judicial imposition of a full and fair hearing prerequisite." *Id*. at 950 (citations omitted). The majority's approach imposes just such a prerequisite—in future cases, if a federal court in this circuit determines that a state court failed to examine enough relevant evidence proffered by a petitioner to support a pending ineffectiveness claim, the state court's judgments are ineligible for deference under AEDPA.[6]

The First Circuit also disagrees with the majority approach, holding that AEDPA deference applies "regardless of the procedures employed or the decision reached by the state court, as long as a substantive decision *was* reached." *Teti*, 507 F.3d at 57 (emphasis in original). Likewise, the Seventh Circuit adheres to the proposition—later adopted by the Supreme Court in *Schriro*—that new evidence presented to the federal court merely bears on the *reasonableness* of the state court's decision, not whether AEDPA deference applies in the first place. *See Matheney v. Anderson*, 377 F.3d 740, 747 (7th Cir.

---

[6] Indeed, as Judge Gorsuch points out, Congress has set forth the sole consequence of a state's failure to provide adequate procedures: a habeas petitioner need not exhaust the state procedures and may proceed directly to federal habeas review. *See* § 2254(b)(1)(B) (a habeas petitioner need not exhaust his constitutional claim in state court where state corrective process is unavailable or is "ineffective to protect the rights of the applicant"). Notably, petitioners in this case do not allege the OCCA's procedures run afoul of § 2254(b)(1)(B).

2004); *see also Pecoraro v. Walls*, 286 F.3d 439, 443 (7th Cir. 2002) ("[E]vidence obtained in [a federal evidentiary hearing] is quite likely to bear on the reasonableness of the state courts' adjudication; that is true, but we do not see why it should alter the *standard* of federal review." (emphasis in original)).

Recently, the Second Circuit joined the ranks, holding that if a federal district court conducts an evidentiary hearing to evaluate new evidence of ineffective assistance of counsel, AEDPA deference still pertains to the ineffectiveness claim. *Wilson v. Mazucca*, 570 F.3d 490, 500 (2d Cir. 2009). In *Mazucca*, the district court held an evidentiary hearing to allow the petitioner's trial lawyer to explain whether his decisions during trial were the product of a legitimate strategy, or were merely ill-conceived mistakes in judgment. *Id*. at 497. The threshold question for the Second Circuit was whether de novo review still applied, now that the new evidence of ineffectiveness had emerged. The Second Circuit noted that AEDPA deference is "not conditional," but rather is "stated in mandatory terms" in the statute. *Id*. at 500. Based on AEDPA's clear mandate, the court concluded that "[a]ny new evidence uncovered in the federal proceeding is relevant only insofar as it assists the habeas court in determining whether the state court reached an unreasonable application of the law." *Id*.

These cases demonstrate that in theory and in practice, courts are able to apply AEDPA's review standards to cases involving proffers of new evidence. The new evidence does not create a new claim, and new evidence does not

-16-

nullify the application of AEDPA. The majority's approach, however, significantly undermines the statutory scheme, and I fear will lead to a cottage industry of repackaging routine trial errors into newly-discovered ineffective assistance claims. In my view, once a state court has made a substantive judgment on a habeas petitioner's ineffectiveness claim, as here, we must apply AEDPA deference to that judgment.

## C.

In an attempt to square its holding with the text of AEDPA and case law from other circuits, the majority adopts a strained definition of the term "adjudicated on the merits." Under the majority's approach, future panels of this court will be required to determine whether a state court considered enough "material evidence" of a petitioner's claim; only then will the court have adjudicated the claim on the merits. *See* Maj. Op. at 14. This approach is problematic for at least two reasons.

First, the majority's approach defies AEDPA's plain language. Under § 2254(d), we defer to a state adjudication regardless of the evidence presented in the state court. If a habeas petitioner believes the state's factual determinations were unreasonable, our review of the petition is still constrained by an analysis of the "evidence presented in the State court proceeding." § 2254(d)(2). And if the state court denies a petitioner effective procedures for vindicating constitutional rights, as the majority implies the OCCA did here, the

-17-

petitioner may make this argument as well, under § 2254(b)(1)(B)(ii). But nowhere does AEDPA suggest we should conduct a de novo review merely because we believe the state court's record was inadequate.

Second, the majority relies heavily on cases that analyze whether a petitioner has "fairly presented" a claim to the state court for purposes of the habeas exhaustion requirement. The majority reads these cases as equating a "claim" with the evidence that undergirds it. Thus, only when the state court considers the proper amount of evidence, including newly proffered evidence, has the claim been adjudicated on the merits. But our case law on exhaustion draws a distinction between claims and evidence. *See Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) ("Fair presentation requires more than presenting all the facts necessary to support the federal claim to the state court or articulating a somewhat similar state-law claim. Fair presentation means that the petitioner has raised the substance of the federal claim in state court." (internal quotation marks and citations omitted)).

As the majority points out, a petitioner does not "fairly present" a claim to state court when he withholds vital allegations or evidence. *See Demarest v. Price*, 130 F.3d 922, 935–36 (10th Cir. 1997). Indeed, to allow a petitioner to game the system in that way would violate federalism and comity. But ultimately, it is the petitioner's arguments and overall rationale for obtaining relief that determine what a claim is. The idea of exhaustion is to give a state

"the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364, 888 (1995) (internal quotation marks omitted) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  The OCCA is given this opportunity when it is apprised of a petitioner's arguments and either accepts or rejects them.  Whatever the OCCA decides, AEDPA commands us to defer to the decision through the lens of subsection (d).

Moreover, the majority fails to recognize that the doctrine of exhaustion imposes requirements on habeas *petitioners*, not on state courts.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999) ("Indeed, *petitioner* has not properly raised before the state courts any of the bases upon which his current ineffective assistance of counsel claims rely.  Thus, *petitioner* has failed to exhaust his ineffective assistance of counsel claims." (emphasis added)).  These requirements further the interests of comity: "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation." *Picard*, 404 U.S. at 275 (internal quotation marks omitted) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)).

Once the petitioner satisfies the exhaustion requirement by fairly presenting a claim, the interests of comity are again implicated, and the state court may adjudicate the claim as it sees fit.  Indeed, the petitioner is not entitled to a *correct* answer from the state court, or even one that is particularly

-19-

fulsome—the petitioner is only entitled to an answer. *See Parker v. Scott*, 394 F.3d 1302, 1308 (10th Cir. 2005) ("[E]ven an incorrect application of federal law can be 'reasonable' under [AEDPA]."); *see also Muth v. Frank*, 412 F.3d 808, 815 (7th Cir. 2005) ("AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court."). AEDPA commands that we defer to the state court's decision, not to its reasoning. The exhaustion doctrine does not qualify or otherwise condition this deference.

## D.

Finally, the majority claims its narrow view of an "adjudication on the merits" is merely an application of long-standing Tenth Circuit case law, namely *Bryan v. Mullin*, 335 F.3d 1207 (10th Cir. 2003) (en banc), and *Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998). However, both *Bryan* and *Miller* are, regrettably, based upon legal principles that predate AEDPA and are no longer persuasive.

*Miller*, without much explanation, applied de novo review to an ineffective assistance of counsel claim merely because such claims are "mixed question[s] of law and fact." 161 F.3d at 1254. *Bryan* repeated this mistake, citing *Miller* for the same proposition. 335 F.3d at 1215–16.

Underpinning *Miller*'s application of the de novo standard was *Parker v. Champion*, 148 F.3d 1219 (10th Cir. 1998). *See Miller*, 161 F.3d at 1254. But

the *Parker* opinion does not even mention AEDPA, and the case *Parker* cites in support of its application of the de novo standard of review, *Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997), explicitly stated that AEDPA *did not apply* because the habeas petition at issue was filed before AEDPA's effective date. *See id*. at 1513 ("[T]he new law [AEDPA] does not apply under these circumstances."). After Congress passed AEDPA and thereby "place[d] a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus," our case law interpreting earlier versions of § 2254 became obsolete. (*Terry*) *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, *Miller*—and consequently *Bryan*—should not have relied upon *Parker* to erroneously conclude that the de novo standard of review applies to *Strickland* claims, even in cases when AEDPA's deferential standard of review should clearly apply.

The Fifth Circuit has exposed an additional flaw in *Miller*. In *Valdez*, the Fifth Circuit noted that *Miller* relied upon yet another pre-AEDPA case for the proposition that "because the state court did not hold any evidentiary hearing . . . we need not afford [the state court's findings] any deference." *See Miller*, 161 F.3d at 1254. As the Fifth Circuit observed, *Miller*'s reliance on outdated case law places the holding in *Miller* on "rather tenuous footing." *Valdez*, 274 F.3d at

-21-

953. *Bryan* too stands on a tenuous foundation because it relies on *Miller* for the same erroneous proposition. *Bryan*, 335 F.3d at 1216.[7]

Thus, contrary to the majority's holding, the OCCA's resolution of petitioners' *Strickland* claims must be given AEDPA deference, notwithstanding the holdings of *Bryan* and *Miller*.

### III.  Application to Petitioners' Claims

Applying the above principles to the cases at hand, both Wilson's and Wackerly's ineffectiveness claims were adjudicated on the merits by the OCCA.

In Wilson's case, the OCCA expressly found he "failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence," i.e., the evidence contained in the Rule 3.11 proffer. *Wilson v. State*, 983 P.2d 448, 472 (Okla. Crim. App. 1998).  Though it was summary in nature, this disposition was unquestionably substantive.  The OCCA

---

[7]  The legal error undergirding *Bryan* and *Miller* can be traced back to *Nguyen v. Reynolds*, 131 F.3d 1340 (10th Cir. 1997).  In that case, we held the presumption of correctness federal courts must accord state court factual findings does not apply "if the habeas petitioner did not receive a full, fair, and adequate hearing in the state court proceeding on the matter sought to be raised in the habeas petition." *Id.* at 1359.  As Judge Gorsuch notes in his dissent, there is no longer a "full and fair hearing" requirement in federal habeas law.  Our later citations to *Nguyen* are therefore erroneous.  It is a pre-AEDPA case that ultimately relies on *Townsend v. Sain*, 372 U.S. 293, 312 (1963), to establish the pre-AEDPA standard for the grant of an evidentiary hearing.  *See Nguyen*, 131 F.3d at 1359 (citing *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1535 (10th Cir. 1994)); *see also Dever*, 36 F.3d at 1535 (citing *Townsend*, 372 U.S. at 312).  In our post-AEDPA world, these precedents lack persuasive authority.  *See Schriro*, 550 U.S. at 474.

evaluated the proffered evidence in light of *Strickland* and found it wanting. This is all AEDPA requires.

Secondly, though the majority holds otherwise, we should not presume the OCCA failed to consider the "non-record" evidence in Wilson's Rule 3.11 proffer. After pointing out the proffered evidence would not demonstrate deficiency or prejudice under *Strickland*, the OCCA went on to conclude, "[W]e further find that Wilson's application for an evidentiary hearing on this claim should be denied." *Wilson*, 983 P.2d at 472 n.8. Rule 3.11 requires the OCCA to consider such proffered evidence when denying a Rule 3.11 application, and we must presume the court followed its own law. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) ("We do not think that a federal court can presume so lightly that a state court failed to apply its own law."); *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) ("[S]tate courts are presumed to know and correctly apply state law."). Thus, we must assume the OCCA examined the Rule 3.11 application and supporting materials and concluded an evidentiary hearing would not advance Wilson's ineffectiveness claim.[8]

---

[8] The majority tries to have it both ways. It first concludes that the OCCA cannot consider Rule 3.11 proffers because they are not part of the "trial record." Maj. Op. at 2, 12. But if the OCCA goes on to consider the proffer, as it did in *Bland v. State*, 4 P.3d 702, 732–34 (Okla. Crim. App. 2000), and *Welch v. State*, 2 P.3d 356, 376–77 (Okla. Crim. App. 2000), the majority will grant the determination AEDPA deference. Maj. Op. at 15. Either the proffer is or is not part of the record. It cannot be both.

As for Wackerly, the OCCA confined its decision to the Rule 3.11 context, stating, "Upon review of the [Rule 3.11] application and supporting exhibits, we find [Wackerly] has shown this Court that trial counsel could perhaps have accessed other information in preparing for trial. However, [Wackerly] has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective." *Wackerly v. State*, 12 P.3d 1, 14 (Okla. Crim. App. 2000). This again was a summary adjudication on the merits, and we must presume the OCCA understood the twin requirements of deficient performance and prejudice required by *Strickland*. If the OCCA believed Wackerly's claim was so weak that it did not even deserve an evidentiary hearing, the OCCA necessarily concluded the claim failed to satisfy *Strickland*.

For the reasons set forth in my dissent in *Wilson v. Sirmons*, 536 F.3d 1064, 1130–47 (2008), I would hold that the OCCA did not unreasonably apply Supreme Court precedent in denying Wilson's ineffective assistance of counsel claim, and would affirm the district court's denial of his petition for habeas corpus. Because this court has not yet addressed the substance of Wackerly's ineffectiveness claim, I would remand to the panel for consideration under the deferential AEDPA standard of review.

## IV. OCCA Interpretation of Rule 3.11

As a final matter, I note that the OCCA can escape the consequences of the majority opinion. By rulemaking or interpretation, it need only clarify that the

Rule 3.11 standard is less onerous than *Strickland* or at least "mirrors" it. *See Upchurch v. Bruce*, 333 F.3d 1158, 1164 n.4 (10th Cir. 2003).

If the OCCA chooses to explicitly contradict the majority's reading of Rule 3.11, we must subsequently defer to the OCCA's Rule 3.11 determinations as adjudications on the merits, even if they are summary adjudications.[9] *See Aycox v. Lytle*, 196 F.3d 1174, 1177–78 (10th Cir. 1999). We must also presume the OCCA will, in accordance with Rule 3.11, examine the affidavits submitted with a defendant's Rule 3.11 application and conclude they do not alter the *Strickland* analysis. *See Bell v. Cone*, 543 U.S. 447, 455 (2005) (articulating the presumption that state courts know and apply their own law); *Lopez v. Schriro*, 491 F.3d 1029, 1043 (9th Cir. 2007) (same). Thus, the majority's concern that Rule 3.11 somehow forecloses substantive review of materials outside the trial record will be obviated.

## V. Conclusion

For the foregoing reasons, I respectfully DISSENT.

---

[9] For this reason, I agree with Judge Gorsuch that certification to the OCCA is appropriate here. Though, in my view, Rule 3.11 sets forth a substantive standard more favorable to defendants than the *Strickland* standard, certification would resolve the matter with certainty.

**Appendix**

*Oklahoma Rule 3.11*

OCCA Rule 3.11 is entitled "Supplementation of Record." Subsection (B) thereof provides, in pertinent part:

B. Supplementation of the record upon request of a party will be allowed only in the following instances:

\*    \*    \*

(3) The Record on appeal is formulated only by matters which have been admitted during proceedings in the district court. A request to supplement the record on appeal with matters not presented to and included as part of the district court record is only available under the following . . . circumstances:

\*    \*    \*

(b) When an allegation of the ineffective assistance of trial counsel is predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial, and a proposition of error alleging ineffective assistance of trial counsel is raised in the brief-in-chief of Appellant, appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel. This Court will utilize the following procedure in adjudicating applications regarding the ineffective assistance of trial counsel based on evidence not in the record:

(i) In order to rebut the strong presumptions of regularity of trial proceedings and competency of trial counsel, the application and affidavits must contain sufficient information to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence.

(ii) If this Court determines such a strong possibility exists, it shall remand the matter to the trial court for an evidentiary hearing, utilizing the adversarial process, and direct the trial

court to make findings of fact and conclusions of law solely on the issues and evidence raised in the application.

(iii) Upon remand, the trial court shall conduct an evidentiary hearing within thirty (30) days from the date of remand. In that hearing, the trial court shall make written findings of fact and conclusions of law to be submitted to this court within thirty (30) days of the evidentiary hearing. The findings of fact and conclusions of law shall determine the availability of the evidence or witness, the effect of the evidence or witness on the trial court proceedings; whether the failure to use a witness or item of evidence was trial strategy, and if the evidence or witness was cumulative or would have impacted the verdict rendered.

(iv) The findings of fact and conclusions of law of the trial court shall be given strong deference by this Court in determining the proposition raised by appellate counsel; however, this Court shall determine the ultimate issue whether trial counsel was ineffective.

Okla. Stat. tit. 22, ch. 18, app. Rule 3.11(B)(3)(b) (1999).

*Wilson v. Workman*, No. 06-5179; *Wackerly v. Workman*, Nos. 07-7034 & 07-7056

**GORSUCH**, **J**., dissenting, **TACHA**, **J**., **O'BRIEN**, **J**., and **TYMKOVICH**, **J**., joining; and **BRISCOE**, **J**., joining Part II.B.


This case requires us to interpret the words of a federal statute. That statute says writs of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court's decision is contrary to a Supreme Court precedent, or unless it rests on an unreasonable application of the Court's cases or an unreasonable reading of the facts before it. 28 U.S.C. § 2254(d). This language seemingly brooks no exception. Yet, rather than applying AEDPA's deferential standard to the claims before us, the court today finds itself applying *de novo* review. How can this be?

The majority tells us this is because a state court does not adjudicate a claim on the merits unless its opinion adequately reflects that the court "consider[ed]" all the evidence we later deem to be "material." Maj. Op. at 12. Under this view, the fact that the state court *says* it is adjudicating a claim on the merits is beside the point. If the state court, in the course of purporting to adjudicate the merits, employs evidentiary rules to exclude evidence we think "material," it somehow cannot adjudicate the claim at all. The state court's opinion might look like, talk like, walk like an adjudication on the merits, but it's not the *real thing*.

I have substantive and procedural difficulties with this view. Substantively, it is inconsistent with AEDPA's plain terms and structure, contradicts the decisions of several other circuits, and effectively frustrates

AEDPA's central purpose by getting us back in the business of grading state court procedures rather than focusing on the reasonableness of the results they reach. That isn't to say state procedures don't matter: when a state court renders a decision on the merits of a federal claim without considering all material evidence, it is surely more likely that its decision will be an unreasonable application of federal law, and thus reversible under § 2254(d). But the fact that a petitioner is more likely to satisfy AEDPA's standard of review isn't a reason to ignore that standard of review, or to disregard a state court's decision by suggesting its adjudication of the merits is really no such thing.

Procedurally, there's no need for any of this. Every member of this court agrees that, if the evidentiary standard embodied in the OCCA's Rule 3.11 is no more onerous than the federal evidentiary standard for deciding ineffective assistance claims, then the OCCA's denial of a Rule 3.11 motion amounts to an "adjudication on the merits" of a federal ineffective assistance claim. The majority and Judge Tymkovich just disagree on the *state law* question how best to read Rule 3.11. As the majority reads the Rule, it imposes an evidentiary standard higher than federal law; as Judge Tymkovich reads it, the Rule parallels federal law. We could and should have just asked the OCCA what its Rule means. After all, the OCCA, not this court, is the authoritative expositor of its own rules. By the simple expedient of certifying a question of state law to the OCCA, we likely could have produced a unanimous or near unanimous result in

this case and avoided both a controversial interpretation of AEDPA and a circuit split on an important question of federal law.

I

At least in Mr. Wilson's case, it is clear that the OCCA *did* adjudicate the merits of his claim. As the majority formulates his claim, Mr. Wilson alleged he received constitutionally ineffective assistance of counsel "with respect to [the presentation of] mental health mitigation [evidence] at the sentencing phase." Maj. Op. at 5. The OCCA spoke to this claim unambiguously:

> ¶ 108 Wilson first asserts that his attorney failed to fully investigate his mental health background or effectively assist Dr. Reynolds in preparation for his second stage testimony. Wilson has filed, contemporaneously with this issue, an application for an evidentiary hearing regarding ineffective assistance of counsel in an attempt to supplement the record with material not found in the record.

> ¶ 109 A review of the trial record shows trial counsel did put forth a mental health expert to rebut the State's continuing threat contention and to mitigate punishment. At trial, Dr. Reynolds testified that he examined Wilson on three separate occasions. He also met with Wilson's mother and was provided with Wilson's medical records, school records and statements from people who knew Wilson. Reynolds testified that Wilson had a severe personality disturbance. Reynolds explained that Wilson had some unusual, bizarre types of thinking that would suggest that he is not in touch with reality at times. Reynolds [sic] testimony indicated that Wilson committed this crime as an intelligent but immature person, and that, because of his family support and his intelligence, he had the capability of being rehabilitated. The mere fact more evidence could have been presented is not, in itself, sufficient to show counsel was deficient. *Douglas*, 951 P.2d at 680. Reynold's [sic] testimony was credible and well developed. **We find Appellant has failed to carry his burden to show either deficient performance by counsel, or prejudice from the omission of this specific evidence.**[FN8]

-3-

FN8. Accordingly, we further find that Wilson's application for an evidentiary hearing on this claim should be denied.

*Wilson v. State*, 983 P.2d 448, 471-72 & n.8 (Okla. Crim. App. 1998) (emphasis added).

What else could be required for a court to adjudicate the merits of a claim? To be sure, in its footnote 8, the OCCA denied Mr. Wilson's request for an evidentiary hearing to pursue collaterally developed evidence. One might read this as excluding collateral evidence from the OCCA's consideration by dint of a state evidentiary rule (as the majority does), or as passing on the collateral evidence and finding it insufficient (as Judge Briscoe does). But either way, the OCCA went on to hold (at the least) that the trial record showed counsel's performance in connection with the presentation of mitigating mental health evidence was neither deficient nor prejudicial, the two essential elements of any Sixth Amendment ineffective assistance claim under *Strickland*. The result the OCCA reached on either *Strickland* element might well be held unreasonable under § 2254(d) for any number of reasons, perhaps including in light of evidence it failed to consider. But none of this diminishes the fact that, wrongly or rightly, the OCCA's opinion adjudicated the merits of Mr. Wilson's claim.

When federal courts deny *Strickland* claims, we do exactly the same thing that the majority contends the OCCA did here: apply rules of procedure and evidence, admit what's allowed, exclude what's not, and then say, as the OCCA did, "We find Appellant has failed to carry his burden to show either deficient performance by counsel or prejudice." The only apparent difference is that the

OCCA is not a federal court, and therefore does not use our wise and sensible procedural and evidentiary rules. Instead, as the majority would have it, the OCCA applies unwise and parochial state rules. As a result, a state court's attempts to adjudicate the claims committed to its jurisdiction can unknowingly fail. Though the OCCA *thinks* it's adjudicating the merits of a Sixth Amendment claim—and *says* what we say in an attempt to accomplish the feat—the majority treats the OCCA's holding as no more than an ineffectual incantation.

Today's result is not only inconsistent with the plain language of the OCCA's decision, it is also inconsistent with the plain language of § 2254. In § 2254(e), Congress expressly anticipated that federal courts sometimes will have material new evidence or facts before them that the state court didn't have the chance to consider. Yet, Congress did not provide for *de novo* review. Even in these circumstances, the plain language of the statute indicates that § 2254(d)'s deferential standard continues to apply. As Judge Cabranes has observed for the Second Circuit, this statutory feature forecloses the notion that material new evidence uncovered in federal habeas proceedings "has any impact whatsoever on the standard of review governing habeas claims." *Wilson v. Mazzuca*, 570 F.3d 490, 500 (2d Cir. 2009).

The majority's contrary holding today cements a circuit split. The Second, Fifth, and Seventh Circuits have each held, as Judge Tymkovich and I would, that AEDPA's mandates in subsection (d) regarding our standard of review "do not lose their force because an intervening evidentiary hearing is held in federal

court" even if material new evidence emerges. *Id.* at 500; *accord Pecoraro v. Walls*, 286 F.3d 439, 443 (7th Cir. 2002); *Valdez v. Cockrell*, 274 F.3d 941, 952 (5th Cir. 2001).[1]  To be sure, additional "evidence obtained in such a [federal court] hearing is quite likely to bear on the reasonableness of the state courts' adjudication," but that fact alone supplies no reason "why it should alter the *standard* of federal review." *Pecoraro*, 286 F.3d at 443 (emphasis in original). Instead, where (as here) the petitioner's claim is governed by subsection (d)(1), "[a]ny new evidence uncovered in the federal proceeding is relevant only insofar as it assists the habeas court in determining whether the state court reached an unreasonable application of law." *Mazzuca*, 570 F.3d at 500.  In other words, federal courts "are directed to apply the same AEDPA standard that would otherwise be in force, now in light of the new information that has been obtained through" federal court proceedings. *Id.* at 501-02.  If that new evidence renders the state court's result deficient under § 2254(d) (as of course it may well), relief can then be granted.[2]

---

[1]  Last year, the Supreme Court granted *certiorari* to resolve the dispute between the circuits on this score, *Bell v. Kelly*, 128 S. Ct. 2108 (2008) (mem.), but later dismissed the writ as improvidently granted, 129 S. Ct. 393 (2008) (mem.).

[2]  The majority seeks to distinguish *Mazzuca* on the basis of its procedural posture.  The majority emphasizes that *Mazzuca* "does not consider whether or not the state court made an adjudication on the merits, but instead asks how new evidence brought at habeas should affect the federal court's evaluation of the state court's decision given that there was an adjudication on the merits." Maj. Op. at 23, n.2.  This distinction fails for the simple reason that the federal evidentiary hearing in *Mazzuca* occurred precisely *because* the state court record lacked

(continued...)

-6-

By defining "on the merits" to mean, effectively, *after giving adequate consideration to material evidence*, the majority returns us to a bygone era. Before AEDPA, § 2254 allowed us to review a state court's findings *de novo* whenever we found the state procedures inadequate. *See* 28 U.S.C. § 2254(d)(2) & (6) (1994) (repealed 1996) (providing for *de novo* review when "the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing," or when "the applicant did not receive a full, fair, and adequate hearing in the State court proceeding"). With AEDPA, Congress expressly abolished this approach. It told us to ask whether the *substantive decisions* made by state courts are reasonable, rather than critique the *processes* by which they reach those decisions. Today's majority opinion does much to restore the *ancien régime*: its rule that a state court cannot really adjudicate a claim on the merits unless it adjudicates it *well*—by considering the "right" evidence—is immediately recognizable as a species of the full and fair hearing requirement Congress rejected. *Cf. Valdez*, 274 F.3d at 950 (rejecting a similar view to the majority's because "[t]his mandatory and all-encompassing language [of AEDPA] . . . leaves

_____

[2](...continued)
relevant material evidence. *See Wilson v. Mazzuca*, 2005 WL 27543, at *1 (2d Cir. 2005) (unpub.) ("[W]ith the record before us, we are unable to assess with confidence whether strategic considerations accounted for certain acts or omissions by defense counsel . . . . We therefore remand to the District Court to afford Wilson's trial counsel the opportunity to explain his actions." (quotation marks omitted)). This finding carries the necessary implication that the state court in *Mazzuca* failed to consider that material non-record evidence—exactly what the majority says happened here. Yet, the Second Circuit accepted the state court's decision as an adjudication on the merits and applied AEDPA deference—exactly what the majority does not do here.

no room for judicial imposition of a full and fair hearing prerequisite" formerly permitted by § 2254). In this way, the majority's definition is at odds with the central purpose of the statute it is interpreting.

In fact, the majority's interpretation of § 2254(d) winds up treating state courts less like instruments of sovereign governments and more like federal agencies whose decisions Congress has instructed us to review by asking whether they were "within the scope of its lawful authority, [and also whether] the process by which it reaches that result [was] logical and rational" with an "explication [that] is not inadequate." *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359, 364, 374 (1998) (citation omitted). The problem is that AEDPA is not the APA. In AEDPA, Congress sought to give meaning to principles of federalism and comity and afford the judgments of state court respect and deference without regard to the length of their explications, directing us instead to extend "deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). As the Supreme Court has emphasized, Congress instructed that a state court's decision "does not even require *awareness* of [the Supreme Court's] cases" to warrant deference under AEDPA, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002) (emphasis in original). Under the majority's interpretation, however, it is impossible to defer to a state court's result without first examining its reasoning—precisely what AEDPA and *Early* say the law is not.

In splitting with other circuits and holding that an "adjudication on the merits" under § 2254(d) requires a state court to give sufficient consideration to evidence we think material, the majority's interpretation does not rely on AEDPA's plain language, structure, or purpose. Instead, it defines the words "adjudicated on the merits" by reference to Black's Law Dictionary. Maj. Op. at 14. But as the Supreme Court has recognized, "[t]he term 'on the merits' has multiple usages." *Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005); *see also Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 501-03 (2001) (describing ambiguity of the term). Thus, the task before us is to ascertain its meaning in *this* statutory context. One handpicked citation to a single authority using an ambiguous term in a friendly way, and without any reference to the statutory regime before us, does not persuade.[3]

---

[3] The majority takes a similar approach to its definition of the word "claim," relying on carefully chosen authorities from other contexts rather than examining the statutory context in which the word is found. *See* Maj. Op. at 13. For example, the majority lifts one definition of "claim" from Black's Law Dictionary (which contains six entries for the word), cites authority that itself describes the term as ambiguous, *see United States v. Ripa*, 323 F.3d 73, 82-83 & n.10 (2d Cir. 2003), and relies on an analogy to Fed. R. Civ. P. 12(b)(6). With respect to Rule 12(b)(6), moreover, the majority suggests that a plaintiff whose complaint contains insufficient factual averments has no claim at all because his suit will be dismissed "for failure to state a claim." Maj. Op. at 13. But the phrase "failure to state a claim," like "AEDPA deference," is just shorthand for the text of the actual rule, which allows dismissal "for failure to state a claim *upon which relief can be granted*." Fed. R. Civ. P. 12(b)(6) (emphasis added). In a case dismissed under Rule 12(b)(6), the plaintiff surely advanced a claim, but relief could not be granted for that claim because the facts he averred in support of it were not sufficient to warrant relief under law. The majority occasionally

(continued...)

One may well complain that the OCCA's adjudicative procedures are unjust, and argue that ineffective assistance claims cannot be fairly decided without reference to evidence outside the trial court record. *See* Maj. Op. at 19. But even assuming this is true, Congress supplied a solution for the problem in AEDPA's text. In subsection (b), Congress indicated that a petitioner need not exhaust any state procedure that is "ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B); *see also Kimmelman v. Morrison*, 477 U.S. 365 (1986). It is an open and interesting question whether the OCCA's Rule 3.11, by limiting extra-record evidence in the consideration of Sixth Amendment claims, meets this threshold. The trouble in this particular case is that Messrs. Wilson and Wackerly have not invoked the protections of subsection (b) or advanced any challenge to Rule 3.11 on that basis, so it can do them no good. In the majority's view, this seems to be reason enough to create another remedy, redressing § 2254(b)'s concern within § 2254(d) by refashioning what it means to adjudicate a claim. Doing so, however, generates a statutory anomaly. Under the

---

[3](...continued)
even goes so far as to suggest that a "claim" consists not only of facts supporting a legal theory, but also *all* the evidence that in turn proves those facts. *See* Maj. Op. at 12 ("The merits question presented is whether, *in light of non-record evidence*, trial counsel's performance satisfied constitutional standards.") (emphasis added). As Judge Tymkovich well explains, this false equivalence between a claim and all the evidence supporting it also undergirds the majority's flawed analogy to the requirement that habeas petitioners exhaust their state remedies. *See* Tymkovich Dissent at 17-18. The point is that, when interpreting an ambiguous term, context matters.

majority's view, not only is seeking a ruling from a state court using inadequate evidentiary procedures unnecessary (under subsection (b)), it is now metaphysically impossible (under subsection (d)).  If we do not like the state court's evidentiary procedures, then we will say not that the state adjudicated the petitioner's claim *unfairly*, but that the state failed to adjudicate the petitioner's claim *at all*.  So it is that, under the reading of the statute the court adopts today, § 2254(b)(1)(B) seems to have little meaningful role left to play, another clue suggesting a problem with the interpretive path the majority has taken.[4]

---

[4]  The court does not mention one of the chief arguments for *de novo* review advanced by the parties in this case, one based on *Rompilla v. Beard*, 545 U.S. 374 (2005), and *Wiggins v. Smith*, 539 U.S. 510 (2003).  In those cases, a state court rejected a petitioner's claim of ineffective assistance of counsel by finding that he had not satisfied the deficient performance element of *Strickland*, without reaching *Strickland*'s remaining prejudice element.  In each case, the Supreme Court held that the state court's deficient performance decision was an unreasonable application of *Strickland* under § 2254(d)(1).  *Rompilla*, 545 U.S. at 389; *Wiggins*, 539 U.S. at 534.  Because the state courts in *Rompilla* and *Wiggins* had not issued any decision on the question of prejudice, the Supreme Court proceeded to review that question *de novo*.  The petitioners suggest these cases allow us to apply *de novo* review to issues not addressed by the state courts.  But the majority abandons this argument for good reason:  in each case, issuance of the writ was consistent with § 2254(d)(1) because the state court's result on the deficient performance question was an unreasonable application of *Strickland*.  Nothing in *Rompilla* and *Wiggins* suggests we may avoid our obligation to find *something* unreasonably wrong with a state court's decision under (d)(1) or (d)(2) before issuing a writ of habeas corpus.

Separately, the majority suggests we dissenters are "concerned" that lawyers will sandbag us by withholding evidence in state court and then producing it in federal court to obtain *de novo* review.  Maj. Op. at 20.  Our concern, however, is instead with arriving at the most likely reading of a law Congress passed, using conventional tools of statutory interpretation.  As the

(continued...)

-11-

II

The course we chart today is not only erroneous, it is unnecessary—and unnecessary in two distinct ways. First, the majority itself identifies a narrower basis supporting its result that does not depend on a controversial reading of AEDPA's text; yet, without explanation, the majority then declines to rest on it. Second, simply certifying our dispute over what Oklahoma's Rule 3.11 means to the institution able to interpret it authoritatively—the OCCA—could have entirely obviated the need for us to interpret § 2254(d)'s terms; yet, the majority eschews that course, too.

A

In the first place, after exerting so much effort to explain why § 2254(d) deference doesn't apply, the majority tells us it makes no difference. Even if the OCCA's decisions *were* adjudications on the merits and so entitled to AEDPA deference, the majority says, it would still reverse them under § 2254(d)(1). Maj. Op. at 19. In other words, we learn that the entire dispute about what it takes to adjudicate a claim on the merits under § 2254(d) is unnecessary to the majority's resolution of these appeals. Our usual course in such circumstances is to assume without deciding that AEDPA deference is due and then reverse because, even

---

[4](...continued)
above statutory analysis reflects, an assumption that lawyers will behave unethically does not inform my (or anyone's) conclusions about what Congress meant by the phrase "adjudicated on the merits."

-12-

affording such deference, the state court's decision could not stand. The majority, however, declines to follow this more restrained path and never tells us why it prefers a broader holding that, in its own view, isn't needed.

I confess that I find even the majority's narrower course unpersuasive on its own terms. The Supreme Court has cautioned that § 2254(d)(1)'s "'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Terry Williams v. Taylor*, 529 U.S. 362, 405 (2000). Yet, the majority's opinion isn't clear about which clause the OCCA has violated. It first tells us that the OCCA's decisions should be reversed as "contrary to . . . clearly established Federal law." Maj. Op. at 19 (quoting § 2254(d)(1)). In order for this to be true, the state court must have either applied a rule that contradicts a Supreme Court decision, or else confronted a set of facts materially identical to a relevant Supreme Court precedent and reached a different result. *Terry Williams*, 529 U.S. at 405-06. Still, the majority's opinion does not tell us what Supreme Court holding the OCCA misstated or what result runs contrary to a decision of the Supreme Court. Instead, in the very next sentence, the majority switches to the "unreasonable application" theory, asserting that "[t]o decide a legal claim without regard to the evidence is surely *unreasonable*." Maj. Op. at 19 (emphasis added). But this also misstates the applicable statutory test: we do not sit to decide whether state courts *behave unreasonably*; the question we may ask is only whether their *applications of federal law*, as embodied in Supreme Court precedents, are

-13-

unreasonable. *See Carey v. Musladin*, 549 U.S. 70 (2006). And the majority identifies no Supreme Court holding the OCCA has contradicted or unreasonably applied. It does supply a quote from *Terry Williams*, but the quoted passage is from Part III of Justice O'Connor's separate concurrence, which did not speak for the Court. Maj. Op. at 19. Then the majority cites a list of *our own* precedents supporting its conclusion that we do not owe deference to adjudications under Rule 3.11. *Id.* at 19-20. There is, of course, a similar list of Tenth Circuit cases supporting just the opposite rule, and this intra-circuit split of panel authority is precisely why we granted *en banc* rehearing in the first place. *See* Maj. Op. at 3. So even if we could somehow leave aside the difficulty that we are not the Supreme Court, our inconsistent panel precedents on this point have certainly not clearly established the state of the law.

Having said all this, the majority does not share my concerns with its alternative holding. Given its apparent confidence in its alternative and narrower holding that reversal is required even if AEDPA applies, there is no need for the court to pursue its primary and broader holding that AEDPA does not apply. Restraint would normally caution against a broader course when the narrower will do. Why issue a sweeping and controversial legal holding about AEDPA's meaning when a fact-bound holding about the statute's application is so readily at hand?

B

-14-

The majority's principal holding is needless in a second and even more fundamental way. The question whether the OCCA's passage in *Wilson* quoted above constitutes an "adjudication on the merits" must be resolved *only if* the OCCA's denial of the Rule 3.11 motion in its footnote 8 is not *itself* an adjudication on the merits. Mr. Wackerly's case turns even more heavily on Rule 3.11's meaning because there the OCCA dealt with his present claim *only* by denying his Rule 3.11 motion.[5]

---

[5] The discussion in the OCCA's opinion in *Wackerly* makes this clear:

¶ 37 In addition to the ineffective assistance of counsel claims raised by Appellant in his Brief-in-Chief, he filed an Application for an Evidentiary Hearing asserting three additional claims which he contends are supported by evidence not in the record but which was available to defense counsel at the time of trial. In this application, Appellant requests an evidentiary hearing on: 1) the failure of defense counsel to impeach Michelle Wackerly; 2) the failure of defense counsel to produce evidence during the *Franks* hearing to establish that Agent Franchini misrepresented information regarding Michelle Wackerly's recollection of the location of the gun; and 3) counsel's failure to investigate and present available evidence which would have warranted different verdicts and sentences in the first and second stages of trial.

¶ 38 Appellant requests this evidentiary hearing based upon Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999). This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of trial . . . ." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the

(continued...)

-15-

It is accepted by everyone on this court that if, in the course of denying an evidentiary hearing under Rule 3.11, the OCCA reviews a petitioner's proffered evidence under standards as favorable to the petitioner as *Strickland*'s, we owe that denial deference under AEDPA without respect to what else the OCCA does or does not say. *Harris v. Poppell*, 411 F.3d 1189, 1196 (10th Cir. 2005) ("[I]f the OCCA rejected Mr. Harris's claim under a standard that is equally or more favorable to him relative to the federal standard, the state court's decision constitutes an adjudication of the federal claim despite citing no federal decisions."); *see also Romano v. Gibson*, 239 F.3d 1156, 1164 (10th Cir. 2001). My colleagues just disagree about whether Rule 3.11 imposes on petitioners a standard more or less onerous than *Strickland* because it requires petitioner to present "clear and convincing evidence [of] a strong possibility" of ineffective assistance. On the one hand, Judge McConnell says "clear and convincing evidence" requires more than federal law, which requires a petitioner to show a

---

[5](...continued)
complained-of evidence." Rule 3.11(B)(3)(b)(i).

¶ 39 Upon review of the application and supporting exhibits, we find Appellant has shown this Court that trial counsel could perhaps have accessed other information in preparing for trial. However, Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

*Wackerly v. State*, 12 P.3d 1, 13-14 (Okla. Crim. App. 2000) (footnote omitted).

*Strickland* violation by a mere preponderance of the evidence. On the other hand, Judge Tymkovich argues that Rule 3.11 requires less of petitioners than *Strickland* because a petitioner need only show "a strong possibility" of ineffective assistance by clear and convincing evidence.

It seems to me that, given the absence of any Oklahoma decision on point, we can do no better than guess at which interpretation of Rule 3.11 (if either) is right. But, more importantly, there is no reason for us to guess. The OCCA has authority to decide definitively what the phrase "clear and convincing evidence" means in the context of its own rule. We should have just asked. If the OCCA had agreed with the majority's interpretation of its Rule, a very large majority (if not all) of us would have agreed that no deference would be owed to the OCCA's decision in *Wackerly*, and we would have had to proceed to confront the § 2254(d) question in Mr. Wilson's case. But if the OCCA interpreted Rule 3.11 in the manner Judge Tymkovich does, as imposing a lesser burden on petitioners than *Strickland,* everyone on this court would have treated the denial of Rule 3.11 applications as implicit adjudications of ineffective assistance claims and applied AEDPA deference to the OCCA's decisions in both *Wilson* and *Wackerly* —and done so without needing to address whether the OCCA's additional language in Mr. Wilson's case amounted to an adjudication of the merits of his claim under § 2254(d). Asking the OCCA to interpret its own rule rather than venture a guess ourselves would have had the benefit, as well, of "'help[ing] build a cooperative

-17-

federalism'" by "giv[ing] meaning and respect to the federal character of our judicial system, recognizing that the judicial policy of a state should be decided when possible by state, not federal, courts." *Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).[6]

Instead of asking the OCCA, the majority ventures a guess about the meaning of state law. Yet, the OCCA can simply tell us tomorrow what Rule

---

[6] The majority emphasizes that the State didn't move for (even though it expressed openness to) certification. Maj. Op. at 32. But, as the majority also acknowledges, we surely have the power to certify questions on our own motion, *see, e.g.*, *Elkins v. Moreno*, 435 U.S. 647, 662 (1978); *Kansas Judicial Review v. Stout*, 519 F.3d 1107, 1120 (10th Cir. 2008), and, as it happens, *sua sponte* certification is the norm, *see* 17A Charles Alan Wright et al., Fed. Prac. & Proc. § 4248, at 509 (3d ed. 2007) ("[o]rdinarily a court will order certification on its own motion"). The majority suggests certification isn't warranted because the question in this case "is not how we should interpret and apply the 'clear and convincing' standard (which we would never have occasion to do) but what past decisions of the OCCA meant when they employed that standard." Maj. Op. at 32. But no one has suggested that we are in the business of applying a state evidentiary rule to parties in a federal habeas proceeding. Instead, the unavoidable fact is that, for us to determine which federal standard of review pertains to Messrs. Wilson's and Wackerly's federal habeas petitions, we need to know the meaning of a state evidentiary rule. The applicability of AEDPA turns on the meaning of OCCA Rule 3.11. We routinely ask states to interpret their own rules and statutes when doing so will aid in the disposition of federal claims and lawsuits, and we should do the same here. To the extent that the majority seems concerned that the OCCA could somehow tell us what Rule 3.11 means only prospectively, and not what it meant at the time it adjudicated *Wilson* and *Wackerly*, this concern is also misplaced. We could have simply asked the OCCA what its Rule 3.11 meant at the time it issued *Wilson* and *Wackerly*, without regard to any later amendments or legal developments (if any happen to exist). Notably, this is exactly the course we took in the case the majority relies upon, *Pino*, 507 F.3d at 1236-38, asking the state court there the meaning of a state statute as of 2003, before certain later statutory amendments.

-18-

3.11 means (or revise it, or repeal it), and we will then be obliged to follow its understanding, regardless of our court's interpretation today. Future panels of this court likewise remain free to certify the question of Rule 3.11's meaning to the OCCA. Given all this, the shelf life of the majority's construction of state law could be short indeed. Precisely because of this fact, and in recognition of certification's useful role in promoting a cooperative federalism, federal courts of appeals do not often (ever?) devote such substantial *en banc* efforts to the adjudication of state law questions. The majority's refusal to certify is made more puzzling when doing so might well have allowed us to avoid issuing a divided opinion, offering a questionable interpretation of an important federal statute, and cementing a split among the federal circuits. Our first interpretive imperative should be to do no harm, and I do not see why we should be so anxious to charge into such a breach when it might be well and honorably avoided.

I respectfully dissent.